NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0172n.06

No. 09-4094

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 23, 2011**
LEONARD GREEN, Clerk

DEMOND HILL,                                    )
                                                )
    Plaintiff-Appellant,                        )
                                                )
    v.                                          )
                                                )
AIR TRAN AIRWAYS,                               )
                                                )
    Defendant-Appellee.                         )
                                                )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE:  COLE, GIBBONS, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Demond Hill appeals a grant of summary judgment in favor of Air Tran Airways, his former employer, in this action for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and O.R.C. § 4112.02(l).  Because Hill presented evidence from which a jury could infer that Air Tran's reasons for terminating his employment were pretextual, there is a genuine issue of material fact as to whether Air Tran engaged in unlawful retaliation, such that a grant of summary judgment was not warranted.

I

In September 2005, Hill began working for Air Tran as a customer service agent (CSA) in the Dayton airport.  He worked the first shift, from 4:00 A.M. to 1:00 P.M., checking in customers, loading luggage, and selling upgrades.  Hill was one of five African-American employees at Air Tran's Dayton station.  His direct supervisor was Tim Thornton, a Caucasian male who supervised

all first-shift CSAs. Thornton's supervisor was Linda Hughes, an African-American female, who was the station manager.

Hill and Thornton did not get along. On June 11, 2006, Hill sent a letter to Air Tran's Human Resources department accusing Thornton of racial bias. One month later, Air Tran issued a final warning letter to Hill in response to "a long, loud, and totally unprofessional confrontation with another crew member." The letter cited three prior instances in which Hill had been reprimanded for misconduct: (1) on March 11, 2006, Hill was late for work and argued with his supervisor over his clock-in time; (2) on March 12, 2006, Hill was reported for arguing with a coworker in the presence of passengers; and (3) on March 19, 2006, Hill was reported for arguing with a passenger about an infant traveling on that passenger's flight. The letter warned that any additional incidents could result in termination and was placed in Hill's personnel file.[1]

No other reports of misconduct involving coworkers or passengers were made against Hill before his suspension on April 10, 2007. Hill alleges that Thornton meanwhile harassed and discriminated against him because of his race by inconsistently enforcing company rules more strictly against him than against white CSAs. Hill claims that Thornton gave white employees breaks freely, allowed white employees to wear hats (against company dress policy), and allowed white employees to eat at the ticket counter. Another African-American CSA, Aaron Neely, testified that Thornton did not like Hill, and was known to "pick on people" and assign undesirable jobs to

---

[1]Hill denies that each of these incidents occurred, and claims that at most they are subjective accounts of the events and are therefore subject to interpretation. Hill also claims that he never received a copy of the final warning letter containing these reported incidents.

employees he did not like. According to Neely, the majority of employees Thornton "picked on" were black, and there was a visible pattern of discriminatory treatment by Thornton.

Hill repeatedly complained of this treatment to Hughes (the station manager). According to Hill, Hughes urged Hill to keep his complaints "in house," and warned that he could be fired for complaining. Nevertheless, on November 9, 2006, Hill filed a formal complaint about Thornton's treatment, describing the allegedly inconsistent enforcement of rules regarding break times, wardrobe, and schedule. The complaint also described a November 4, 2006 incident in which Thornton allegedly raised his voice at Hill and "got in his face." Although Air Tran determined that Thornton's behavior did not constitute discrimination or harassment, the company warned Thornton that further inappropriate action would be grounds for termination.

Events on April 10, 2007, culminated in Hill's suspension. That morning, Hill was assigned to work as the primary ticket counter agent for three flights taking off at 6:00 A.M., 7:00 A.M., and 8:00 A.M. Three other CSAs, Melissa Beard, Brandon Fenton, and Henry Chaffin, were assigned to work those flights by supporting Hill at the ticket counter, and then loading bags onto the plane thirty minutes before takeoff. Around 6:15 A.M., Hill took a fifteen-minute coffee break, and left the other CSAs to finish the check-in for the 7:00 A.M. flight.[2] Hill claims that he had already checked in all but two passengers on this eighty-passenger flight. After returning from his break, Hill began

---

[2]Hill alleges that taking fifteen-minute breaks during early morning operations, though not company policy, was standard practice as long as the line of passengers waiting to be checked in was short and the ticket counter was covered by another CSA. Hughes and Thornton, on the other hand, testified that taking breaks during check-in was not standard practice, especially during early morning operations.

the check-in for the 8:00 A.M. flight. Hill complained to Thornton that he had to complete the check-in by himself, because Fenton and Chaffin had taken a break and refused to help. Thornton said he would deal with the issue later. Hill then confronted Beard, Fenton, and Chaffin in the bag room. Hill phoned Thornton a second time to report this confrontation, and Thornton alleges that Hill abruptly hung up on him. Hill denies hanging up on Thornton.

Thornton immediately reported the incident to Hughes in an email, stating: "I am not going to tolerate this kind of abuse at work and do hope you will reprimand him in some sort of way. If not I will be forced to and see that it is followed through." Hughes took statements from Hill, Fenton, and Chaffin about the events that transpired, but the three gave conflicting accounts. Hughes then met with Hill around 11:00 A.M. that morning. She informed Hill that he was being suspended and that she would recommend termination.

Later that day, Hill sent Hughes an email in which he again complained about Thornton. That same day, Hughes recommended to Human Resources that Hill be terminated. Human Resources sent Hill a letter of termination on April 13, 2007, citing as grounds for termination the April 10, 2007 events and "four different occasions" on which Hill had been warned about his conduct.[3] Human Resources also issued written warnings to Fenton and Chaffin for their failure to assist Hill with the 8:00 A.M. check-in, but Fenton and Chaffin were not suspended or otherwise disciplined.

---

[3]Presumably, this referred to the three March 2006 incidents and the "long, loud, and totally unprofessional confrontation with another crew member" that was the subject of the final warning letter on July 11, 2006.

Hill alleges that during his conversation with Hughes on April 10, Hughes stated that Hill was being suspended for insubordination (for hanging up on Thornton). Hill claims that Hughes also said, "I'm tired of you and Tim [Thornton], I'm tired of your complaints against Tim," and that she "bet" Hill would return to her office with further complaints within thirty days. Although she could not recall making these statements, Hughes admitted that she was irritated by Hill's complaints. Hughes testified, however, that the complaints were not the deciding factor in the termination decision and that Thornton's email suggesting that Hill be reprimanded did not have an impact on her decision.

After unsuccessfully pursuing his claims before the Ohio Civil Rights Commission and the EEOC, Hill filed suit in state court, alleging race-based discrimination, retaliation, wrongful discharge, and emotional distress. Air Tran removed the case to federal court and moved for summary judgment. Upon consent of the parties, the case was referred to a magistrate judge, who granted summary judgment in favor of Air Tran on all counts. Hill filed objections, which the magistrate judge construed as a motion to amend the judgment. *See* Fed. R. Civ. P. 59(e). The magistrate judge then denied the motion, and Hill now appeals.

II

The only issue on appeal concerns whether Air Tran unlawfully terminated Hill in retaliation for an activity protected under Title VII. Contrary to the district court's conclusion, there is a genuine issue of material fact as to whether Air Tran engaged in unlawful retaliation. Although it

is a close question, Hill has presented evidence from which a jury could infer that Air Tran's reasons

for terminating his employment were pretextual.

To make out a prima facie case of retaliation under the familiar *McDonnell Douglas* standard,

Hill needs to establish that: "(1) he engaged in activity protected by Title VII; (2) the exercise of his

civil rights was known to the defendant; (3) thereafter, the defendant took an employment action

adverse to [Hill]; and (4) there was a causal connection between the protected activity and the

adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Once

Hill establishes a prima facie case of retaliation, the burden shifts to Air Tran to articulate a

legitimate, nondiscriminatory reason for its actions. *Virts v. Consol. Freightways Corp. of Del.*, 285

F.3d 508, 521 (6th Cir. 2002). And if Air Tran articulates such a reason, the burden shifts back to

Hill to show that the given reason was a mere pretext for retaliation. *Id.*

The district court did not reach this burden-shifting analysis because it found that Hill had

not made out a prima facie retaliation case. On de novo review, however, we consider all three steps

of the burden-shifting framework to determine whether Hill has met his burden of showing that Air

Tran's reasons for discharging him were a mere pretext for retaliation.[4]

---

[4]In his objections to the district court's Decision and Order, Hill asserted for the first time that he could survive summary judgment under a mixed-motive theory by showing that the decision to terminate his employment was at least in part motivated by his protected actions. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008). The district court refused to consider this claim because "a motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Similarly, Hill may not raise on appeal a new argument that was not properly raised below. *See Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996). Thus, Hill's mixed-motive claim is not properly before this court.

A

The district court properly found that Hill had established the first three elements of a prima facie retaliation case. First, no one disputes that Hill complained to Hughes and to Air Tran's Human Resources department about Thornton's alleged race-based discrimination. This is protected activity under Title VII. *See* 42 U.S.C. § 2000e-3(a). Second, Air Tran was clearly aware of Hill's exercise of his civil rights. Hughes was the manager who dealt with most of Hill's complaints, and she testified that she was also aware of the formal complaint submitted to Human Resources. Third, Hill's termination on April 13, 2007 undeniably qualifies as an adverse action.

Contrary to the district court's conclusion, however, Hill presented sufficient evidence from which a jury could infer that Hughes fired Hill because he was engaging in protected activity. A jury could infer retaliatory motive from the temporal proximity between Hill's complaints of discrimination and the company's decision to terminate him; from Hughes' comments leading up to and during the April 10 meeting; and from the fact that similarly situated employees who did not complain were treated more favorably than Hill was. Drawing all factual inferences in Hill's favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), this evidence sufficed to establish the causation element of a prima facie retaliation case.

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.

2008). Although prior to the incident on April 10, 2007, Hill had not formally complained about

Thornton in over five months, it is undisputed that Hill complained about Thornton only a few days

before the termination. Hill complained to Hughes about Thornton on April 10, 2007, the day of the

last incident with Thornton and a few days before Hill's termination on April 13. Hill also

complained about Thornton in an email to Hughes on April 10, the same day Hughes recommended

Hill's termination.[5] Although these complaints were informal, they are relevant to an assessment

of temporal proximity. Morever, this was not the first time that Hill had been disciplined in close

proximity to making a complaint. One month after Hill sent a letter to Human Resources accusing

Thornton of racial bias, the company issued Hill a final warning letter.

Evidence of temporal proximity should not be viewed in isolation. *See Mickey*, 516 F.3d at

525-26. Even if Hill's complaints had been removed in time from the date that he was fired, there

is evidence that they were not far removed from Hughes' mind when she made the decision to

terminate him. According to Hill's testimony, Hughes encouraged him to keep his complaint against

Thornton "in house" in November 2006, and warned Hill that both he and Thornton could be fired

if Hill contacted Human Resources. Additionally, Hill points out that when Hughes informed him

about the suspension, she stated that she was "tired of [his] complaints against Tim," and that she

"bet" Hill would be back in her office within thirty days with more problems. This evidence is

largely undisputed. Although Hughes could not recall telling Hill that she was "tired" of his

---

[5]It is not clear from the record whether Hughes received Hill's email before or after she recommended termination on April 10. If Hill complained to Hughes before she recommended termination, then that is additional evidence of retaliatory motive.

complaints, she did recall Thornton's email stating, "I am not going to tolerate this kind of abuse at work and do hope you will reprimand [Hill] in some sort of way," and she admitted that she was irritated by Hill's complaints.

Considering the circumstances in which these comments were made, and taking Hill's testimony as true, a jury could infer that Hughes acted with a retaliatory motive. Hughes' statement that she was "tired" of Hill's complaints against Thornton was made by someone who was in the decision-making chain of authority. *See Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 432 (6th Cir. 2009). As Hill's manager, Hughes had the authority to convene the April 10 meeting, to suspend Hill's employment, and to recommend his termination to Human Resources. Indeed, this comment was made during the decision-making process itself, at the very meeting in which Hill learned that he was being suspended, and in close proximity to the act of termination on April 13, 2007. *See id.* Hughes' remarks, together with Air Tran's history of disciplining Hill around the same time that he complained of race-based discrimination, are therefore sufficient to establish the causation element of a prima facie retaliation case.

B

Because Hill made out a prima facie case under the *McDonnell Douglas* standard, the burden shifted to Air Tran to produce a legitimate, nondiscriminatory reason for its action. Air Tran maintains that Hill was fired for poor performance. Air Tran argues that Hill was terminated for taking an unauthorized break and for refusing to assist his coworkers on April 10, 2007—both allegedly violations of company policy. The company also cited "four different occasions" on which

Hill had been warned about his "[d]isrespectful, abusive or unprofessional conduct with customers [and] Crew Members." The district court viewed the events of April 10 as "just the last straw in a long line of misconduct." The record supports that view of the evidence.

The record includes: (1) a disciplinary report against Hill for arguing with a supervisor regarding clock-in time on March 11, 2006; (2) a disciplinary report for yelling at another crew member on March 12, 2006; (3) several handwritten statements from Air Tran employees documenting an incident involving a yelling outburst between Hill and a fellow employee; and (4) multiple disciplinary reports for Hill regarding bag-check errors, late arrivals, and unexplained absences. A jury could find that these were legitimate, nondiscriminatory reasons for terminating Hill. The company's proffered reasons therefore suffice to meet its burden under the *McDonnell Douglas* standard.

C

Assuming, then, that Air Tran met its burden of producing legitimate, nondiscriminatory reasons for Hill's termination, the burden shifted back to Hill to discredit those reasons. Hill could meet his burden of showing that Air Tran's explanations were pretextual by producing evidence that "(1) they had no basis in fact, (2) they did not actually motivate the company's decision or (3) they did not suffice to motivate that decision." *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008). Hill has produced enough evidence to raise a question about whether Air Tran's proffered explanations were a pretext for retaliation for at least one of these reasons.

First, Air Tran's proffered reasons are based on facts that are disputed. Hill disputes both Air Tran's version of the events on April 10, 2007, and the three disciplinary incidents that allegedly occurred in March 2006. In fact, Hill maintains that he was actually a model employee. One coworker (Aaron Neely) testified that Hill was "one of [Air Tran's] good workers," an employee who had "a lot of experience, a lot of motivation," and who treated customers "in a friendly manner." Although there is also evidence that Hill had problems with coworkers other than Thornton, the facts on which Air Tran claims its decision was based are not uncontested.

Second, the evidence presented by Hill raises a question about whether these facts, even if true, actually motivated the company's decision. Hughes testified that the issues between Hill and Thornton were not motivating factors for her decision. But that testimony is undermined by her comment that she was "tired" of Hill's complaints about Thornton and that she "bet" Hill would be back in her office to complain again within thirty days. Hughes also testified that she considered Hill's personnel file, which contained reports of incidents with Thornton and others. But this file contained both Hill's disciplinary history and his complaints against Thornton. Under the circumstances, the question of whether Hughes was motivated by Hill's disciplinary history, and not by his complaints of race discrimination, is one for the trier of fact.

Third, the evidence raises a question as to whether Air Tran's proffered explanation suffices to motivate its decision to terminate Hill. Hill disputes whether "taking a break" is sufficient grounds for termination. Even if breaks were technically against the rules, Hill argues that there was an informal custom of tolerating breaks as long as they did not interfere with customer service. Air

Tran relies on Hughes's deposition testimony as evidence of a formal policy that breaks could not be taken during check-in for a flight, especially during the early morning operations. But Hill claims that he and other CSAs took breaks at their discretion, and that enforcement of the rule against breaks was inconsistent and discriminatory.

What is more, Hill argues, his coworkers Fenton and Chaffin *also* took a break on April 10, 2007, and refused to help *him* during the early morning check-in. Yet Fenton and Chaffin were not terminated and were instead given only written warnings. The magistrate judge concluded that Hill had failed to show that similarly situated employees were treated differently. But it is not obvious that Hill and Chaffin were not similarly situated. Although Fenton had begun working for Air Tran on April 4, 2007, just days before the incident, and therefore did not yet have a disciplinary record, Chaffin had worked for Air Tran for more than a year and had a disciplinary record that in some respects resembled Hill's. Chaffin had been given several warnings for bag-check errors, making an untimely deposit, missing a shift, and having an incomplete fuel log, although he had not been given a final warning and had not been cited for improper behavior toward coworkers or customers. Under the circumstances, whether Chaffin's disciplinary history is so dissimilar to Hill's that Hill has failed to show that other similarly situated employees were treated differently presents a genuine issue of fact.

III

For these reasons, we reverse the grant of summary judgment.