RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARCIA BRYSON,

        *Plaintiff-Appellant,*

     *v.*

MIDDLEFIELD VOLUNTEER FIRE
DEPARTMENT, INC.; SCOTT ANDERSON,

        *Defendants-Appellees.*

No. 10-3055

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00724—Christopher A. Boyko, District Judge.

Argued:  June 9, 2011

Decided and Filed:  September 2, 2011

Before:  MOORE and GIBBONS, Circuit Judges; BORMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Dale A. Bernard, THE BERNARD LAW FIRM, Cleveland, Ohio, for Appellant.  Mark D. Katz, ULMER & BERNE LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:**  Dale A. Bernard, THE BERNARD LAW FIRM, Cleveland, Ohio, for Appellant.  Mark D. Katz, Natalie M. Hostacky, ULMER & BERNE LLP, Cleveland, Ohio, for Appellees.

      MOORE, J., delivered the opinion of the court, in which BORMAN, D. J., joined. GIBBONS, J. (pp. 12–16), delivered a separate opinion concurring in part and dissenting in part.

_____

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Plaintiff-Appellant Marcia Bryson appeals the district court's grant of summary judgment to Defendants-Appellees Middlefield Volunteer Fire Department, Inc. (the "Department") and Scott Anderson (together, "Defendants"), on her claims of sexual harassment and retaliation brought pursuant to Title VII of the Civil Rights Act of 1964.  Specifically, Bryson appeals the district court's conclusion that the Department's firefighters were not employees during the relevant time period and therefore cannot be counted towards Title VII's requirement that an employer have fifteen employees to be subject to the Act.  Because the district court did not consider and weigh all aspects of the firefighters' relationship with the Department, we **REVERSE** the district court's grant of summary judgment on Bryson's Title VII claims, **REVERSE** the district court's decision declining to exercise supplemental jurisdiction over Bryson's state-law claims, and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND & PROCEDURE

The Department is a non-profit organization incorporated in Ohio for the purpose of providing fire and emergency services in Middlefield, Ohio.  The Department is composed of its "members":  firefighters classified in various groups depending on qualifications and current status.  R.7-3 at 5–7 (Articles of Incorporation) (outlining membership classifications, which include active members, associate members, inactive members, honorary members, and cadet members).  Bryson became a firefighter-member in the Department in 1991 and also became an administrative assistant for the Department in 1997.  She alleges that defendant Anderson, who was the Fire Chief until 2005, subjected her to unwanted sexual advances, requests for sexual favors, and other verbal and physical contact of a sexual nature, including, for example, that Anderson demanded sexual favors in return for pay raises.  Bryson filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment

Opportunity Commission ("EEOC") on May 25, 2004 and July 2, 2004, alleging discrimination on the basis of sex. On October 4, 2004, Bryson filed an amended charge to include a claim of retaliation, alleging that she was terminated or constructively discharged on July 19, 2004.

At the request of the EEOC, the OCRC transferred the case to the EEOC for investigation. In response to inquiry by the Department, the EEOC sent a letter to the Department concluding that the Department was an employer for purposes of Title VII because its firefighter-members were employees; the EEOC stated that the Department "exercises sufficient control over the actions of the Members" and the members "are compensated for their services," even if they are not on the Department's payroll. R.3-6 (Feb. 16, 2005 EEOC Ltr.). On September 11, 2006, the EEOC issued its determination, concluding that the evidence established that Bryson was sexually harassed and subjected to a sexually hostile work environment. The EEOC also concluded that there was insufficient evidence to support Bryson's allegations of retaliation and constructive discharge. The EEOC issued Bryson a Notice of Right to Sue on December 15, 2006.

Bryson filed suit in the district court on March 13, 2007, and filed a First Amended Complaint on April 16, 2007. Bryson alleged claims of hostile-work-environment sexual harassment under Title VII against the Department (Count I) and under Ohio law against Defendants (Count IV), quid pro quo sexual harassment under Title VII against the Department (Count II) and under Ohio law against Defendants (Count V), retaliation under Title VII against the Department (Count III) and under Ohio law against Defendants (Count VI), and wrongful constructive discharge in violation of state and federal public policies against Defendants (Count VII).

Defendants moved for partial summary judgment and for dismissal for lack of subject-matter jurisdiction on Bryson's Title VII claims on the basis that the Department does not meet the statutory definition of employer because it did not have fifteen employees for the relevant time period. Defendants argued that the firefighter-members were not employees because they received only de minimis benefits for their services. Bryson opposed the motion and also filed a motion pursuant to Federal Rule of Civil

Procedure 56(f) (2009),[1] requesting additional discovery.  The district court reviewed cases that have analyzed the distinction between volunteers and employees, and concluded that "compensation analysis is an antecedent inquiry that must be examined prior to application of the economic realities or common law agency tests."  R.17 (Mar. 26, 2008 Dist. Ct. Op. at 5).  The district court granted Bryson's motion for discovery and denied, subject to reconsideration after the completion of discovery, Defendants' motion.

After the parties completed discovery on the issue of benefits received by the firefighter-members, Defendants filed a supplement to their motion for partial summary judgment, which Bryson opposed.  On December 14, 2009, the district court denied Defendants' motion to dismiss for lack of subject-matter jurisdiction, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) ("[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."), and granted Defendants' motion for partial summary judgment of Bryson's Title VII claims.  The district court concluded that the benefits provided to the firefighter-members "do not constitute significant benefits that would raise a factual issue for the jury."  R.25 (Dec. 14, 2009 Dist. Ct. Op. at 11).  Having dismissed Bryson's federal claims, the district court declined to exercise supplemental jurisdiction over the state-law claims that remained.  Bryson now timely appeals.

## II.  ANALYSIS

To be subject to the antidiscrimination provisions of Title VII, the Department must qualify as an "employer," meaning that it must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  42 U.S.C. § 2000e(b).  The parties agree that the relevant time period is from 2002 through 2007 and that Bryson was an employee covered under Title VII.  The Department admits that it had either four or five employees during the years 2002 through 2007 in the positions of Fire Chief, Assistant Fire Chief, Treasurer-

---

[1]When Rule 56 was revised in 2010, subsection (f) was moved to subsection (d).  *See* Fed. R. Civ. P. 56 (2011) 2010 Amendments Notes.

Inspector, Secretary, and Administrative Assistant. The Department additionally admits that four trustees were also employees in 2007. The parties dispute, however, whether the firefighter-members qualify as employees under Title VII.

## A. Standard of Review

"We review the district court's grant of summary judgment de novo." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, we must view all facts and inferences in the light most favorable to Bryson, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Whether the Department is an "employer" for purposes of Title VII, "[i]n the absence of a conflict of material fact, . . . is appropriate for the court to resolve . . . as a matter of law." *Simpson v. Ernst & Young*, 100 F.3d 436, 439 (6th Cir. 1996), *cert. denied*, 520 U.S. 1248 (1997); *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir.) ("The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts . . . the question is to be resolved by the finder of fact in accordance with the appropriate rules of law."), *cert. denied*, 506 U.S. 940 (1992); *accord NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 260 (1968).

## B. Whether Firefighter-Members Were Employees

An "employee" is defined as "an individual employed by an employer . . . ." 42 U.S.C. § 2000e(f). Because this definition "is completely circular and explains nothing," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (describing same definition under ERISA), the Supreme Court has instructed courts to interpret the term "by incorporating the common law of agency." *Ware v. United States*, 67 F.3d 574, 576 (6th Cir. 1995) (citing *Darden*, 503 U.S. at 322–24 (ERISA); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ("work made for hire" provisions of the

Copyright Act of 1976); *United Ins. Co.*, 390 U.S. at 258 (National Labor Relations Act ("NLRA"))). The Supreme Court in *Reid* and *Darden* stated,

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Darden*, 503 U.S. at 323–24 (quoting *Reid*, 490 U.S. at 751–52) (citing Restatement (Second) of Agency § 220(2) (1958); Rev. Rul. 87-41, 1987-1 C.B. 296, 298–299). We have applied the common-law agency test from *Reid* and *Darden* to determine whether an employment relationship exists under different statutes, particularly in the context of distinguishing employees from independent contractors.[2] *See Weary v. Cochran*, 377 F.3d 522, 524–25 (6th Cir. 2004) (Age Discrimination in Employment Act ("ADEA")); *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499–500 (6th Cir. 2004) (Title VII and ADEA); *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998) (Americans with Disabilities Act); *Ware*, 67 F.3d at 576–78 (Internal Revenue Code). However, we have not considered the issue of employment relationships in the context of a volunteer. Bryson argues that the district court erred in adding a significant-remuneration requirement as an independent antecedent to the common-law agency test. For the reasons explained below, we agree.

Other circuits that have considered the issue have included remuneration as a factor in their analyses. *See, e.g.*, *United States v. City of New York*, 359 F.3d 83, 92 (2d

---

[2] We previously applied an "'economic realities' test, which looks to the totality of the circumstances involved in a work relationship, including whether the putative employee is economically dependent upon the principal or is instead in business for himself." *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir. 2004) (internal quotation marks omitted). "The substantive differences between the two tests are minimal." *Id.* (citing *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998); *Simpson*, 100 F.3d at 442–43).

Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1243–44 (11th Cir. 1998), *cert. denied*, 528 U.S. 930 (1999); *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998), *cert. denied*, 526 U.S. 1051 (1999); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220–21 (4th Cir. 1993); *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 73–74 (8th Cir. 1990); *cf. Waisgerber v. City of Los Angeles*, 406 F. App'x 150, 151–52 (9th Cir. 2010) (unpublished decision) (citing *Fichman v. Media Ctr.*, 512 F.3d 1157 (9th Cir. 2008)) (remanding to give plaintiff the opportunity to amend complaint "to allege the 'substantial benefits' necessary to make her an employee under Title VII").

The EEOC also analyzes remuneration when evaluating a putative employment relationship. The EEOC Compliance Manual[3] states that, although volunteers usually are not employees, "an individual may be considered an employee of a particular entity if . . . [she] receives benefits such as a pension, group life insurance, workers' compensation, and access to professional certification . . . ." EEOC Compliance Manual § 2-III(A)(1)(c) (2000), *available at* www.eeoc.gov/policy/docs/threshold.html (citing *Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 473 (2d Cir. 1999); *Haavistola*, 6 F.3d at 222). "The benefits constitute 'significant remuneration' rather than merely the 'inconsequential incidents of an otherwise gratuitous relationship.'" *Id.* (quoting *Haavistola*, 6 F.3d at 222). In this case, the EEOC determined that the firefighter-members are employees because the Department "exercises sufficient control over the actions of the Members" and because the Members "are compensated for their services," even if they are not on the Department's payroll. R.3-6 (Feb. 16, 2005 EEOC Ltr.).

We believe that the district court erred, however, in its conclusion that remuneration must be an independent antecedent inquiry. The district court adopted the Second Circuit's two-step test for determining whether an individual is an employee under Title VII, which requires a plaintiff to establish first that she is a "hired party" by

---

[3]The EEOC Compliance Manual "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance" but "is entitled to respect only to the extent of its persuasive power." *EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490, 500 (6th Cir. 2006) (internal quotation marks omitted); *accord Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 449 n.9 (2003).

showing that she received "substantial benefits not merely incidental to the activity performed," before the district court may consider the common-law agency test from *Darden* and *Reid*. *City of New York*, 359 F.3d at 91–92 (internal quotation marks omitted); *see* R.25 (Dec. 14, 2009 Dist. Ct. Op. at 3 & n.4) (citing *O'Connor v. Davis*, 126 F.3d 112, 115–16 (2d Cir. 1997), *cert. denied*, 522 U.S. 1114 (1998)). In this case, each individual firefighter-member is a "hired party" in that each has a contractual relationship with the Department—the firefighter-member provides firefighting services to the Department in exchange for benefits from the Department, including worker's compensation coverage, insurance coverage, gift cards, personal use of the Department's facilities and assets, training, and access to an emergency fund. *See Demski v. U.S. Dep't of Labor*, 419 F.3d 488, 492 (6th Cir. 2005) (concluding that petitioner—the sole shareholder of a company that had contracts with the purported "employer" company—was not an "employee" of the latter company under the Energy Reorganization Act, 42 U.S.C. § 5851, because "[i]t is undisputed that no contractual relationship of any sort existed between [the purported "employer" company] and [the petitioner]"). But we decline to adopt the Second Circuit's view that, to be a "hired party," a plaintiff must demonstrate that she received significant remuneration. *See City of New York*, 359 F.3d at 91–92; *York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125–26 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002); *O'Connor*, 126 F.3d at 115–16.

We do not believe that the term "hired party" from *Darden* and *Reid* supports an independent antecedent remuneration requirement. The Supreme Court included the term "hired party" in *Darden* only in a direct quote from its decision in *Reid*, and the *Reid* Court's use of "hired party" was in the context of the "work for hire" provision from the Copyright Act. Although the Court did not define "hired party" in *Reid*, it did define "hiring party": "By 'hiring party,' we mean to refer to the party who claims ownership of the copyright by virtue of the work for hire doctrine." 490 U.S. at 739. We doubt that the Court would define "hiring party" as such while at the same time considering "hired party" to carry much more substantive weight in requiring that it be an individual who received significant remuneration for his services. Moreover, the Court's instruction to apply the common law of agency is not limited to when the

individual receives significant remuneration but rather "when Congress has used the term *'employee'* without defining it." *Reid*, 490 U.S. at 739–40 (emphasis added); *accord id.* at 741 ("[T]he term 'employee' should be understood in light of the general common law of agency."); *see also Darden*, 503 U.S. at 323 ("[W]e adopt a common-law test for determining who qualifies as an 'employee' under ERISA.").

Our decision to consider remuneration as a factor when determining whether a employment relationship exists comports with *Darden*'s instruction that, when evaluating a particular relationship, "'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Darden*, 503 U.S. at 324 (quoting *United Ins. Co.*, 390 U.S. at 258); *accord Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 450–51 (2003); *Johnson*, 151 F.3d at 568; *Ware*, 67 F.3d at 578. "'[T]he extent of control . . . is not dispositive,'" and several of the factors listed in *Darden* and *Reid* relate to financial matters. *Ware*, 67 F.3d at 577–78 (quoting *Reid*, 490 U.S. at 752). To be sure, "[t]he degree of importance of each factor [will vary] depending on the occupation and the factual context in which the services are performed." Rev. Rul. 87-41; *accord Ware*, 67 F.3d at 578. But no one factor, including remuneration, is decisive, and therefore no one factor is an independent antecedent requirement.

We consider and weigh all incidents of the relationship no matter how the parties characterize the relationship. The issue of an employment relationship can arise in numerous different scenarios, for example: partner, *Simpson*, 100 F.3d at 439; shareholder/director, *Clackamas*, 538 U.S. at 442; board members, 110 Cong. Rec. 7218; welfare work-program participant, *City of New York*, 359 F.3d at 86–87; volunteer researcher, *Jacob-Mua v. Veneman*, 289 F.3d 517, 521 (8th Cir. 2002); graduate student, *Cuddeback v. Fl. Bd. of Educ.*, 381 F.3d 1230, 1234–35 (11th Cir. 2004), and *Ivan v. Kent State Univ.*, 863 F. Supp. 581, 585 (N.D. Ohio 1994); intern, *O'Connor*, 126 F.3d at 113; medical student, *McGuinness*, 170 F.3d at 979; medical intern, EEOC Dec. No. 88-1, 1988 WL 192714, at *1; prisoner, *Baker v. McNeil Island Corrs. Ctr.*, 859 F.2d 124, 127–28 (9th Cir. 1988); inmate, EEOC Dec. No. 86-7, 1986 WL 38836, at *1; and

union steward, *Ferroni v. Teamsters Local* 222, 297 F.3d 1146, 1152 (10th Cir. 2002), and *Daggitt v. United Food & Commercial Workers Int'l Union, Local 304A*, 245 F.3d 981, 987–89 (8th Cir. 2001). Moreover, alleged employee-employer relationships can be complex and may not fit neatly into one particular categorization.

Here, Bryson put forth evidence that the firefighter-members received worker's compensation coverage, insurance coverage, gift cards, personal use of the Department's facilities and assets, training, and access to an emergency fund, *cf. Pietras*, 180 F.3d at 473 (analyzing similar benefits received by volunteer firefighters); *Haavistola*, 6 F.3d at 221 (same), and that, for particular portions of the relevant time period, certain firefighter-members received a one-time, lump-sum retirement payment[4] and others received an hourly wage. The district court, however, limited its analysis to remuneration without considering any other aspects of the Department's relationship with its firefighter-members. Although remuneration is a factor to be considered, it must be weighed with all other incidents of the relationship. Accordingly, we reverse the district court's grant of summary judgment on Bryson's Title VII claims and remand for further proceedings consistent with this opinion. The district court on remand can address whether any further discovery is necessary. Because we remand the case to the district court for further proceedings on the Title VII claims, we reverse the district court's decision dismissing Bryson's state-law claims so that the district court again may decide whether to exercise supplemental jurisdiction over these claims. *See Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 539 (6th Cir. 2010).

---

[4]We agree with the district court that only the two active firefighter-members who were not already counted as employees are relevant to the analysis of the Department's Longevity Fund. Associate and inactive members are, in effect, retired workers and therefore should not be counted as employees for purposes of § 2000e(b). *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 n.2 (1997) (indicating that § 2000e(b) "refer[s] to those persons with whom an employer has an existing employment relationship"); *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 168 (1971) (stating, in analyzing the NLRA, that "[t]he ordinary meaning of 'employee' does not include retired workers; retired employees have ceased to work for another for hire"); *Graves*, 907 F.2d at 74 (indicating that employment must involve a duty of service owed to the employer).

### III.  CONCLUSION

The district court erred in concluding that remuneration must be an independent antecedent inquiry when evaluating whether the firefighter-members were employees of the Department.  Because the district court did not consider and weigh all incidents of the firefighter-members' relationship with the Department, we **REVERSE** the district court's grant of summary judgment to Defendants on Bryson's Title VII claims, **REVERSE** the district court's decision declining to exercise supplemental jurisdiction over Bryson's state-law claims, and **REMAND** the case for further proceedings consistent with this opinion.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

JULIA SMITH GIBBONS, Circuit Judge, concurring in part and dissenting in part. I agree with the majority that a remand is necessary because, on the factual record of this case, the question of remuneration cannot be decided as a matter of law. However, I disagree with the majority's conclusion that, when evaluating whether an individual is an "employee" for purposes of Title VII of the Civil Rights Act of 1964 ("Title VII"), the court must weigh remuneration as merely one factor under the common-law agency test set forth in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323–24 (1992), and in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989). I would instead adopt the two-step inquiry applied by several of our sister circuits and by the district court, requiring the putative employee to make a threshold showing of remuneration before analyzing the putative employment relationship under the common-law agency test.

As the majority correctly observes, this case presents our first occasion to address the scope of the term "employee" as it applies in the volunteer context. But several cases from our sister circuits have considered this issue, and their analysis is instructive. Foremost, in evaluating whether a volunteer firefighter is an "employee" of the fire department for the purpose of Title VII protection, both the Fourth and Second Circuits have required a threshold showing of significant remuneration or job-related benefits. In *Haavistola v. Community Fire Co.*, the Fourth Circuit held that where a volunteer firefighter had received "indirect but significant remuneration" through benefits including a disability pension, group life insurance, survivors' benefits, tax exemptions for unreimbursed travel expenses, and scholarships for dependents upon death, a reasonable fact-finder could conclude that an employment relationship existed under Title VII between the firefighter and her department. 6 F.3d 211, 221–22 (4th Cir. 1993) (noting that "[t]he district court must leave to a factfinder the ultimate conclusion whether the benefits represent indirect but significant remuneration . . . or

inconsequential incidents of an otherwise gratuitous relationship"). Although Haavistola contended that control—not remuneration—was the "essential element" in defining an "employee," the Fourth Circuit disagreed, commenting that "[c]ontrol loses some of its significance in the determination [of] whether an individual is an employee in those situations in which compensation is not evident." *Id.* at 220–21. The Second Circuit, citing *Haavistola* with approval, likewise stated that "the question of whether someone is or is not an employee under Title VII usually turns on whether . . . she has received direct or indirect remuneration from the alleged employer" and that "a non-salaried volunteer firefighter's employment status under Title VII is a fact question when that firefighter is entitled to significant benefits." *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999) (internal quotation marks omitted).

Similarly, in *Graves v. Women's Professional Rodeo Association, Inc.*, the Eighth Circuit considered whether the membership roster of the Women's Professional Rodeo Association ("WPRA"), a non-profit corporation organized for the purpose of sanctioning rodeo barrel races, could be construed as a list of its employees. 907 F.2d 71, 72 (8th Cir. 1990). Although WPRA did not compensate members directly or indirectly, certain benefits inured from membership: namely, WPRA offered advances on rodeo fees and the opportunity for annual recognition as the World Champion Barrel Racer. *Id.* Graves, a male rodeo contestant who was denied membership, filed suit against WPRA, alleging a claim for gender discrimination under Title VII. *Id.* at 71. Although Graves argued that WPRA's control over its membership approximated an employment relationship, the Eighth Circuit rejected this argument:

> For most members, belonging to WPRA and competing on the professional rodeo circuit is not a remunerative proposition. The relationship between WPRA and its members simply bears no resemblance to that between an employer and employee within the accepted usage of those terms: no compensation is made, only prize money won—and that is not supplied by the alleged employer nor does the recipient necessarily come from the postulated class of employees. . . . Only by skipping this crucial and elementary initial inquiry—whether there exists an employment relationship, according to

the ordinary meaning of the words—and jumping straight into verbal manipulation of the case law . . . can Graves make an implausible argument sound even marginally plausible.

*Id.* at 73. The Eighth Circuit further noted that the legislative history of the Civil Rights Act "explicitly provide[d] that the dictionary definition should govern the interpretation of 'employer' under Title VII" and that "[c]ompensation by the putative employer to the putative employee in exchange for his services . . . is an essential condition to the existence of an employer-employee relationship."[1] *Id.* (stating that "employee" means "one employed by another usu. in a position below the executive level and usu. for wages" (quoting *Webster's Third New Int'l Dictionary* 743 (unabridged) (1981))). Thus, *Haavistola*, *Pietras*, and *Graves* make clear that, in evaluating whether a volunteer is an "employee" under Title VII, several of our sister circuits have required plaintiffs to make a threshold showing of "indirect but significant remuneration," *Haavistola*, 6 F.3d at 222, or "significant benefits," *Pietras*, 180 F.3d at 473.

The majority, however, states that we cannot require a showing of remuneration as an antecedent inquiry, independent of the common-law agency test, because "employee-employer relationships can be complex and may not fit neatly into one particular categorization." (Majority Op. at 10.) But, courts have applied this two-step test in a variety of factual circumstances, notwithstanding that the putative employment relationship is "complex." For example, in *United States v. City of New York*, the Second Circuit held that the district court erred by finding as a matter of law that four welfare recipients who participated in New York City's Work Experience Program, a mandatory welfare work program, were not "employees" within the meaning of Title VII and thus were not entitled to Title VII's protections. 359 F.3d 83, 87 (2d Cir. 2004). In determining whether an individual was an employee for Title VII purposes, the court applied a two-part test:

---

[1] Although the Supreme Court has not defined "employee" in the Title VII arena, it has construed the meaning of this term under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq. See NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85 (1995). As in the Title VII context, "employee" is defined broadly under the NLRA: "The term 'employee' shall include any employee . . . ." *Id.* at 89 (quoting 29 U.S.C. § 152(3)). There, the Court noted that "[t]he ordinary dictionary definition of 'employee' includes any 'person who works for another in return for financial or other compensation.'" *Id.* at 90 (quoting *American Heritage Dictionary* 605 (3d ed. 1992)).

> First, the plaintiff must show she was hired by the putative employer. To prove that she was hired, she must establish that she received remuneration in some form from her work. This remuneration need not be a salary, but must consist of substantial benefits not merely incidental to the activity performed. Once plaintiff furnishes proof that her putative employer remunerated her for services she performed, we look to the thirteen factors articulated by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) to determine whether an employment relationship exists.

*Id.* at 91–92 (internal citations and quotation marks omitted). On the facts of the case, the court held that "the relationship alleged here—which includes cash payment, the related benefits, and the requirement that the plaintiffs' work be useful—if proved, establishes the plaintiffs as employees for the purposes of Title VII." *Id.* at 97.

The Tenth Circuit also has required a showing of remuneration in evaluating whether a medical student could state a claim for discrimination against the university under Title I of the Americans with Disabilities Act ("ADA"). *See McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998). The court remarked that "a university[] may confer certain benefits on an individual and exercise a modicum of control over him without establishing a master-servant relationship" and that Graves's Title I claim failed because, "as a threshold matter," he made no showing of remuneration. *Id.*; *cf. Seattle Opera v. NLRB*, 292 F.3d 757, 762 (D.C. Cir. 2002) (applying the two-step test in determining whether auxiliary choristers were employees of the opera under the National Labor Relations Act, 29 U.S.C. § 152(3)); *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997) (holding that an unpaid student intern was not an "employee" under Title VII because the "preliminary question of remuneration [was] dispositive": the intern "received . . . no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay, nor was she promised any such compensation"). The court further stated that a student is not considered an employee of the university "[u]nless [the] student receives remuneration for the work he performs." *McGuinness*, 170 F.3d at 979.

In accordance with the viewpoints of our sister circuits, I would "turn to common-law principles to analyze the character of an economic relationship 'only in

situations that plausibly approximate an employment relationship.'" *Davis*, 126 F.3d at 115 (quoting *Graves*, 907 F.2d at 74). And, no "plausible" employment relationship exists "[w]here no financial benefit is obtained by the purported employee from the employer." *Id.* at 115–16. Thus, in analyzing whether an employer-employee relationship exists within the meaning of Title VII, I would adopt the two-step test applied by other circuit courts: first, the plaintiff must show that she was hired by the putative employer by "establish[ing] that she received remuneration in some form from her work," and, second, after the plaintiff establishes remuneration, the court will apply the common-law agency test set forth in *Darden* and *Reid* "to determine whether an employment relationship exists." *City of New York*, 359 F.3d at 91–92. While "[t]his remuneration need not be a salary, [it] must consist of substantial benefits not merely incidental to the activity performed." *Id.* at 92 (internal quotation marks omitted).

Here, Bryson has offered evidence that the volunteer firefighters in her department received benefits including workers' compensation coverage, insurance coverage, gift cards amounting to $300 or less, training, access to an emergency fund, and personal use of the department's facilities and assets. I would therefore remand this case in order for a jury to decide the disputed issue of "whether the benefits represent indirect but significant remuneration . . . or inconsequential incidents of an otherwise gratuitous relationship." *Haavistola*, 6 F.3d at 222. *But see Evans v. Wilkinson*, 609 F. Supp. 2d 489, 494–97 (D. Md. 2009) (holding that benefits, including a length of service program, a first-time homeowner's assistance program, and a scholarship program, were insufficient to establish an employment relationship between a volunteer emergency medical technician and the rescue squad). Despite my agreement that remand is proper, I disagree with the majority's conclusion that consideration of remuneration is just one factor of the common-law agency test and therefore dissent from its analysis.