NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0919n.06

No. 11-1148

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 20, 2012*

LEONARD GREEN, Clerk

SCOTT TRUJILLO,

    *Plaintiff-Appellant,*

v.

HENNIGES AUTOMOTIVE SEALING SYSTEMS
NORTH AMERICA, INC., a foreign corporation
sometimes doing business as GDX Automotive and
formerly known as GDX North America Inc.,

    *Defendant-Appellee.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

O P I N I O N

BEFORE:    BOGGS and COLE, Circuit Judges; and OLIVER, Chief District Judge.[*]

    COLE, Circuit Judge.  Scott Trujillo, the former director of global finance for Defendant

Henniges Automotive Sealing Systems North America, Inc. ("Henniges"), was terminated on

September 15, 2008.  Trujillo alleges that he was terminated in retaliation for complaints he made

at the time regarding racist statements uttered by Henniges management, as well as for a complaint

to Henniges's Vice President for Human Resources regarding those comments.  The district court

found that Trujillo did not make out a prima facie case of retaliation under Title VII, as his informal

complaints did not constitute protected activity under the statute.  For the reasons set out below, we

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge of the United States District Court for the
Northern District of Ohio, sitting by designation.

AFFIRM the grant of summary judgment on Trujillo's retaliation claim with regard to the statements themselves, but REVERSE the district court's grant of summary judgment on Trujillo's retaliation claim with regard to his complaint to Henniges human resources personnel, and REMAND the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Scott Trujillo was hired by Henniges in early 2008 as a corporate controller. (Trujillo Dep., R.23-17, PageID# 183, at 41:9-24.) Henniges was formed in late 2007 from the merger of two former competitors, GDX and Metzeler. (*Id.*, PageID# 182, at 38:8:17.) Henniges manufactured sealing and anti-vibration components for the automotive industry. (*Id.* at 38:18-21.) Henniges operated a number of plants around the world, including two in Mexico. (*Id.* at 38:22 - 39:5.)

In mid-July 2008, Trujillo participated in a conference call with Henniges's senior management and the management of the Henniges plant in Guadalajara, Mexico. (*Id.*, PageID# 198-99, at 224:14 - 225:11.) After the conference call ended, Larry Rollins, Henniges's Vice President of Operations, referred to the Mexican plant employees as "those f***ing wetbacks."[1] (*Id.*, Page ID# 199, at 226:10-12.) After the meeting ended, Trujillo confronted Rollins regarding the comment, though in a "lighthearted way," and Rollins was "very embarrassed and . . . very apologetic. . . ." (*Id.*, PageID# 200, at 230:3-9.)

---

[1] Henniges does not dispute that these incidents occurred. We view all facts on summary judgment in the light most favorable to the non-moving party, *Bryson v. Middlefield Fire Dept., Inc.*, 656 F.3d 348, 351 (6th Cir. 2011).

In early September 2008, Trujillo traveled with a group of Henniges's management to review the European operations of the company. During a dinner with other Henniges executives, Trujillo discussed with Rollins the relationship between Juan Perez, an employee at one of Henniges's Mexican plants, and Wayne Campbell, the Henniges finance manager for both Mexican plants. Perez and Campbell had a poor working relationship, which Trujillo attributed to the harsh management style of Campbell. Trujillo asked if Rollins would suggest to Campbell that he "soften his style with Juan," and suggested that Campbell's style was "very intimidating and very unnerving" to Latin American employees. (*Id.*, PageID# 201, at 235:2-11.) Rollins cut Trujillo off and said, "F*** that cultural bulls**t, Scott, and tell Juan to grow up." (*Id.* at 235:18-19.) Later, Rollins publicly characterized Perez as "f***in' worthless" as an employee. (Rollings Dep., R. 25-52, PageID# 562, at 89:11-12.) At the same dinner, Rollins referred to African-Americans as "brothers" repeatedly, even after being corrected by Trujillo. (Trujillo Dep., R.23-17, PageID# 202, at 237:8-19.)

In light of the comments by Rollins, Trujillo spoke to Geri Gasperut, Henniges's Vice President of Human Relations, who was also present on the European trip. (*Id.* at 238:21-23.) Trujillo could not identify specifically which comments of Rollins he related to Gasperut, but he did testify that he "sa[id] something to her about Rollins' continued—I say continued because it happened more than once—choice to say inappropriate or derogatory things about other races." (*Id* at 240:6-9.)

A week after returning from the European trip, Trujillo was fired. (Trujillo Dep., R. 31-2, Page ID# 762, at 194:2-11.) Gasperut was present at the meeting in which Trujillo was fired, and stated that the firing was done because Trujillo was not "a good fit." (*Id.* at 195:18-19.)

Trujillo filed suit in the Eastern District of Michigan, alleging that he was terminated in retaliation for lodging complaints regarding Rollins's racially-oriented comments.[2] (Complaint, R. 1, PageID# 6, at ¶ 26.) Henniges filed a motion for summary judgment, arguing, inter alia, that Trujillo did not engage in protected activity, and thus could not demonstrate an element of the prima face case for discrimination. The district court granted summary judgment to Henniges, holding that "Plaintiff did not oppose any Title 7 violations," instead making only "a vague charge of discrimination." (Hearing Tr. on Mot. for Summ. J., R. 36, PageID# 850, at 38:7-10.) This appeal followed.

## II. ANALYSIS

A grant of summary judgment by the district court is reviewed de novo. *Bryson*, 656 F.3d at 351. "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). All facts, and all inferences drawn from those facts, must be taken in the light most favorable to the non-moving party, in this case Trujillo. *See Id.*

---

[2] Trujillo also alleged that his termination was itself a product of race and/or national origin discrimination. Trujillo voluntarily withdrew this claim at the hearing on the motion for summary judgment. (Hearing Tr. on Mot. for Summ. J., R. 36, PageID# 817, at 5:11-15.)

To establish a prima face case of retaliation under Title VII, the terminated employee must show "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). The relevant "protected activity" in this case is defined in 42 U.S.C. § 2000e-3(a) as "oppos[ing] any practice made an unlawful employment practice by this subchapter. . . ." The term "oppose" in the statute should be understood according to its ordinary meaning, which is "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't. of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting Webster's New International Dictionary 1710 (2d ed.1958)).

The district court concluded that Trujillo did not "oppose" the allegedly discriminatory comments made by Henniges's employees, and as such did not engage in protected activity. In doing so, it relied on our formulation that "a plaintiff must engage in a discrete, identifiable, and purposive act of opposition to discrimination." (Hearing Tr. on Mot. for Summ. J., R. 36, PageID# 850, at 38:2-5 (citing *Thompson v. North Am. Stainless, LP*, 567 F.3d 804, 816 (6th Cir. 2009) (en banc), *rev'd on other grounds* 131 S.Ct. 863 (2011)). Trujillo argues that this formulation is an incorrect statement of the Supreme Court's holding in *Crawford*, and in any event, is no longer good law in light of the Supreme Court's subsequent reversal of *Thompson*. We need not reach this issue, because we find that the result is the same under either the *Thompson* formulation or Trujillo's formulation.

With regard to Trujillo's response to the comments made by Rollins, we agree with the district court that they do not constitute acts of "opposition" to discrimination, even under Trujillo's articulation of the *Crawford* standard. We have previously held that advocating for members of a protected class is protected activity for purposes of Title VII retaliation. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513 (6th Cir. 2009). Thus, contrary to the district court's conclusion, Trujillo could have engaged in protected activity if he had complained about Rollins's comment at the time, even though those comments were not directed at Trujillo personally. However, Trujillo's own testimony makes clear that he did not complain to Rollins about the comments at the time they were made. With regard to the "wetback" comment, Trujillo admits that he did not communicate that Rollins's comment offended him, let alone that he was complaining about the racial or ethnic character of the conduct. (Trujillo Dep., R. 23-17, PageID# 200, at 229:19-20.) Similarly, Trujillo testified that after the "cultural bulls**t" statement by Rollins, "I said, I'll talk to [Perez] about acclimating to Wayne's style and I'll try to keep the peace. And I exited the conversation as quickly as I could." (*Id.*, PageID# 201, at 236:15-18.) Finally, Trujillo's only response to the "brothers" comment was to clarify whether Rollins was referring to African-Americans. (*Id.*, at 237:15-19.) Nothing in Trujillo's responses can reasonably be construed as "opposition" to the alleged racial character of the statements.

In contrast, the district court erred in holding that Trujillo's statement to Gasperut was not in "opposition" to the alleged racial character of Rollins's comments. Trujillo stated in his deposition that he spoke to Gasperut and "sa[id] something to her about Rollins' continued—I say continued because it happened more than once—choice to say inappropriate or derogatory things

about other races." (Trujillo Dep., R.23-17, PageID# 202, at 240:6-9.) Taking the facts in the light most favorable to Trujillo, this statement can be construed as a complaint about a hostile work environment caused by racial and national origin discrimination. When assessing hostile environment claims, we have emphasized that "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468-69 (6th Cir. 2009) (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999)) (internal quotation marks omitted). Moreover, "[t]his court's caselaw therefore makes clear that the factfinder may consider similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Id.* at 469 (quoting *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008)) (alteration in original) (internal quotation marks omitted).

We have repeatedly held that complaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a prima facie case of retaliation. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007); *see also Hill v. Air Tran Airways*, 416 F.App'x 494, 498 (6th Cir. 2011); *Shepard v. Uniboring*, 72 F.App'x 333, 336 (6th Cir. 2003). The fact that it was, as the district court characterized it, an "informal conversation" (Hearing Tr. on Mot. for Summ. J., R. 36, PageID# 851, at 39:19-20), does not change the nature and purpose of the conversation, which was a "discrete, identifiable, and purposive" opposition to racially-oriented language. *Thompson*, 567 F.3d at 816.

It is true that we have found that some complaints to human resources personnel are not sufficiently specific to constitute opposition to employment discrimination. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313-14 (6th Cir. 1989). *Booker*, however, is distinguishable. In *Booker*, the employer had already begun proceedings to demote the employee when the employee sent a letter to human resources raising a number of objections to the process, including racial discrimination. *Id.* at 1309. We found that the gravamen of the letter to human resources was a complaint about management practices, rather than one of racial discrimination. *See id.* at 1313 ("An examination of the letter indicates that it is not in opposition to a violation of the Act. Booker was not contesting any unlawful employment practice; he was contesting the correctness of a decision made by his employer.") Here, Trujillo specifically states that the only issue he raised with Gasperut was the racially-oriented nature of Rollins's comment, not any complaints over management style. Moreover, while we found in *Booker* that an accusation of a racially-oriented comment by an employee does not implicate direct racial discrimination in demotion decisions, *id.*, here the comments themselves are the unlawful employment practice to the extent that they create a hostile work environment. Thus, Trujillo's claim regarding Rollins's alleged statements is relevant to the underlying alleged Title VII violation in a way that is not the case in *Booker*. Finally, we did note that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Id.* But that statement was made in the context of a charge of "ethnocism," a claim that we were unable to define. *See id.*, n.4. Trujillo's complaint to Gasperut, while perhaps not a model of clarity or specificity, is far more concrete than a charge of "ethnocism."

Henniges also argues that Trujillo could not reasonably have believed that the conduct of Rollins constituted a violation of Title VII. A plaintiff "opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." *Booker*, 879 F.2d at 1312-13. Henniges argues that Trujillo could not have had that good faith belief, and analogizes this case to *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001). There, the Supreme Court found the comments alleged in the complaint to have occurred were so de minimis that no reasonable person would believe they would constitute sexual harassment, particularly in light of the fact that the complainant's job required her to review sexually-oriented materials, and the complainant conceded that reviewing those materials "did not bother or upset her." *Id.* at 271. In contrast, Trujillo alleges that a senior Henniges's manager made multiple racially-oriented comments over the course of a relatively short period of time, some of them rather severe. This conduct is far more serious than the singular allegation in *Breeden*. Moreover, there is no dispute that the comments did upset Trujillo, insofar as he sought out Gasperut to voice his concerns. A reasonable person in Trujillo's position, particularly one without legal training, could conclude that Rollins's comments constituted hostile environment discrimination in violation of Title VII.[1]

---

[1] In reaching this conclusion, we do not mean to suggest that Henniges engaged in conduct that was in violation of Title VII, or even that Trujillo could make out a prima facie case of discrimination under Title VII. Indeed, the fact that Trujillo voluntarily dismissed his direct discrimination claim under Title VII suggests that he could not make out such a claim. (Hearing Tr. on Mot. for Summ. J., R. 36, PageID# 817, at 5:7-16.) The relevant test here is whether Trujillo had a good faith belief at the time he spoke to Gasperut that Rollins's comment were creating a hostile work environment, not whether he was correct.

Finally, Henniges also argues, and the district court held, that the conversation with Gasperut was not opposition because Gasperut did not understand Trujillo to be complaining of racial or other inappropriate bias. But this conclusion conflates the elements of the prima facie case. The possibility that Gasperut may have misinterpreted Trujillo's intentions does not diminish the fact that it constitutes protected activity. If it is the case that Gasperut did not properly interpret Trujillo's comments, that could go to whether Henniges and its executives were aware of Trujillo's protected activity, or whether the protected activity is causally connected to Trujillo's termination. These questions are unresolved, as the district court rested summary judgment exclusively on the protected-activity prong of the prima facie case. We take no position on whether Trujillo can meet his burden on these, or any other, elements of the prima facie case beyond the protected-activity prong, and remand to the district court for consideration of these questions in the first instance.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the grant of summary judgment on Trujillo's retaliation claim with regard to the statements made by Rollins, REVERSE the district court's grant of summary judgment on Trujillo's retaliation claim with regard to his complaint to Henniges's human resources personnel, and REMAND the case for further proceedings consistent with this opinion.

**DANNY J. BOGGS, Circuit Judge,** concurring in part and dissenting in part**.** I agree with the majority opinion that the plaintiff's hearing "racially-oriented comments" by a fellow worker did not constitute protected activity, even if they made the plaintiff uncomfortable. However, with respect to the portion of the opinion reversing as to the second grounds for plaintiff's allegation of retaliation for protected activity, I do not agree. As the majority correctly notes, "Trujillo could not identify specifically which comments of Rollins he related to" the vice-president of human relations, but only that he "sai[d] something to her about Rollins's continued – I say continued because it happened more than once – choice to say inappropriate or derogatory things about other races." (Maj.Op. at 3)

If the plaintiff had complained that such comments constituted discrimination *against him*, I would have no quarrel with the majority opinion. If plaintiff had in any way intimated that such remarks could constitute discrimination against *other people* in the company, I would concur. However, plaintiff himself said: "I kind of was just venting. I was not intending for her to take action." Plaintiff's brief says that this conversation was opposition to hostile work-environment discrimination, but plaintiff's complaint and deposition make no such connection. Not every casual remonstrance against bad language equates to complaining of illegal discrimination.

On balance, then, I think Judge Battani did not err in holding that this single, off-hand remark was an "act of opposition to *discrimination*" rather than a casual "heads-up" to higher management that Rollins was being a jerk and potentially a problem.

Therefore, I respectfully dissent from the portion of the majority opinion reversing that aspect of the district court's decision.