A. WAYNE AND ROSEANNE M. SMITHWICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smithwick v. Commissioner
Docket No. 1458-92
United States Tax Court
T.C. Memo 1993-582; 1993 Tax Ct. Memo LEXIS 598; 66 T.C.M. (CCH) 1545; December 9, 1993, Filed *598 Decision will be entered under Rule 155. For petitioners: V. Jean Owens. For respondent: T. Scot Simpson. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1988 in the amount of $ 11,346.04. All Rule references are to the Tax Court Rules of Practice and Procedure. The sole issue for decision is whether petitioners performed services as employees or as independent contractors during the year in issue. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioners resided in New Port Richey, Florida, at the time their petition was filed. In August 1974, petitioner A. Wayne Smithwick (Mr. Smithwick) executed an Allstate Agent Compensation Agreement. That agreement governed Mr. Smithwick's relationship with Allstate until August 1986 when Mr. Smithwick signed an amendment to the agreement and assumed a newly created insurance sales agent position known as a Neighborhood Office Agent (NOA). In September 1986, petitioner Roseanne Smithwick (Mrs. Smithwick) also executed an agreement with Allstate and became an NOA. She has worked *599 as an NOA since that time. The agreement and amendment signed by Mr. Smithwick and the agreement signed by Mrs. Smithwick are hereinafter referred to collectively as the Agreements. Under the Agreements, petitioners agreed to devote all their business time to selling Allstate insurance products. Petitioners agreed not to represent or solicit insurance for any other company without Allstate's prior written consent. As limited exceptions to this general rule, the Agreements permitted petitioners to write insurance applications under assigned risk plans (so long as Allstate participated in any such plan) and to represent any affiliate specified by Allstate. During the year in issue, petitioners sold flood insurance, Florida Joint Underwriters' Association insurance and other types of insurance which were not Allstate products. As NOA's, petitioners assumed primary fiscal responsibility for the success of their careers. Petitioners earned all of their income through commissions on new business and renewals. Petitioners personally bore the obligation to pay for most of their business expenses. Although petitioners technically operated two separate agencies, they ran the businesses *600 together, sharing office space, expenses and personnel. Petitioners selected their office location, subject to Allstate's approval. They negotiated their lease and paid for improvements to the property. Allstate required that the lease agreement contain a provision stating that Allstate was not a party to the lease and had no responsibility with respect to the lease. Petitioners were responsible for selecting and for paying all personnel working in their office. The decision to retain personnel was an exercise of petitioners' professional judgment made in connection with their responsibility to operate their own office. Petitioners interviewed potential employees, fixed the terms and conditions of their services, maintained day-to-day authority over them, and established and paid their compensation. Under the Agreements, Allstate played only a limited role in determining whether petitioners could or should hire personnel. Allstate reserved the rights to approve personnel hired by petitioners (Allstate generally obtained background checks which were paid for by petitioners) and to limit the number of agents who might occupy one office. In addition, Allstate provided an administrative *601 requirement that personnel retained by petitioners be routed through an employee leasing service approved by Allstate. The leasing service paid the personnel and was in turn reimbursed by petitioner. As part of the NOA arrangement, petitioners each received an Office Expense Allowance (OEA) from Allstate. The OEA's were not based on actual amounts expended, but on a percentage of petitioners' gross sales of Allstate insurance products from the immediately preceding year. During the year in issue, the OEA's were insufficient to reimburse petitioners completely for business expenses they incurred. Allstate bore no responsibility to reimburse petitioners for business expenses exceeding their OEA's. Independent of the OEA's, Allstate was obligated under the Agreements to provide petitioners with a startup office furniture package (e.g., desks, chairs, and a filing cabinet). This furniture remained Allstate property. Petitioners were responsible for purchasing or leasing other operational supplies such as a copier, computer, fax machine, and telephone system. The Agreements required petitioners to maintain regular business hours and to attend occasional training and development *602 programs to learn about changes in the insurance industry and features of new insurance products. At all times, however, petitioners used their own styles and methods to sell insurance. As part of their relationship with Allstate, petitioners received certain fringe benefits. Those benefits included compensated vacation days, participation in an Allstate funded pension plan, participation in an Allstate 401(k) plan, partial funding of petitioners' health insurance, and contributions to petitioners' dental and life insurance plans. With respect to Mr. Smithwick, many of these fringe benefits began before he became an NOA and remained in effect after he signed the amendment to his original agreement with Allstate. Petitioners had neither exclusive territorial rights nor any vested interest in any business produced under the Agreements' terms. Under the Agreements, all records petitioners maintained pertaining to Allstate policy holders were Allstate property and were required to be surrendered upon demand. Further, all premium payments collected by petitioners were required to be treated as trust funds and promptly transmitted from petitioners to Allstate without deduction of *603 amounts due from Allstate to petitioners and without petitioners making any other deductions for any purpose. Also, Allstate reserved the right to reject any insurance application or terminate or refuse to renew any policy. As NOA's, petitioners generally had three meetings annually with an Allstate agency manager (an individual employed by Allstate to monitor insurance agents' operations). One meeting was held at the beginning of the year to examine petitioners' sales results from the preceding year and to set new sales goals; a second meeting was held midyear to check the progress of the set goals; and a final meeting was held at the end of the year to review that year's results. During the year in issue, either petitioners or Allstate could terminate the Agreements by mailing written notice of termination. Mrs. Smithwick also had the option of terminating her arrangement with Allstate orally. Allstate could not terminate its relationship with either of the petitioners because of unsatisfactory work unless that petitioner received prior notice that his or her work was unsatisfactory and had been given a reasonable opportunity to bring his or her performance up to satisfactory *604 standards. From the Agreements it is apparent that Allstate considered petitioners to be employees. During the year in issue, Allstate sent petitioners Forms W-2 reflecting wages paid to them totaling $ 165,929. Petitioners reported this amount as wages earned on their 1988 Federal income tax return, and on Schedule C claimed a net loss from business of $ 61,256 (the difference between their NOA business expenses in the amount of $ 99,277 and their combined OEA for 1988 in the amount of $ 28,312). Respondent does not contest petitioners' claimed business expense deductions, but argues that the expenses are deductible as Schedule A unreimbursed employee business expenses subject to the 2 percent of adjusted gross income floor and the alternative minimum tax, and not as Schedule C business expenses which are fully deductible and are not subject to the alternative minimum tax. OPINION We have recently examined whether an insurance salesman working under an NOA agreement is an independent contractor or an employee, on facts essentially indistinguishable from this case. Butts v. Commissioner, T.C. Memo. 1993-478. In Butts, the taxpayer also worked *605 as an NOA for Allstate and had deducted his unreimbursed business expenses from gross income, as would an independent contractor, rather than as miscellaneous itemized business deductions, as would an employee deducting unreimbursed employee business expenses. Based on the record in Butts we concluded that the taxpayer was professionally associated with Allstate as an independent contractor and permitted him to report his income and expenses on Schedule C. We reached this conclusion after finding: (1) Petitioners exercised a high degree of control over the manner in which they operated their business; (2) petitioners personally incurred most of their business expenses; and (3) petitioners bore the burden of risk of loss from their business. Id. In making this finding, we noted that we were not persuaded by the fact that the agreement between Allstate and the taxpayer referred to the taxpayer as an employee or the fact that the taxpayer reported his Allstate income as wages on his Federal income tax return. Rather, our focus was on the actual relationship existing between the contracting parties, and that a contract purporting to create an employer/employee relationship *606 is not controlling where application of the common law factors to the facts and circumstances of a particular case establishes that no such relationship exists. Id.
We find that there are no essential facts in the instant case distinguishable from those presented in Butts, and no legal arguments presented by respondent in the instant case that were not addressed and rejected in Butts. Thus, on the basis of our reasoning in Butts v. Commissioner, supra, we conclude that during the year in issue, petitioners were professionally associated with Allstate as independent contractors and are entitled to report their business income and expenses on Schedule C. Decision will be entered under Rule 155.