**Albert and Helen R. WARE,**
**Plaintiffs–Appellees,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

**No. 94–1293.**

United States Court of Appeals,
Sixth Circuit.

Argued April 14, 1995.

Decided Oct. 16, 1995.

---

James R. Hulbert (argued and briefed), Grand Rapids, MI, for Plaintiffs-Appellees.

Richard Farber, David English Carmack, Paula K. Speck (argued), Gary R. Allen, Acting Chief (briefed), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, DC, for Defendant-Appellant.

Before: NELSON and BOGGS, Circuit Judges; and GILMORE, District Judge.[*]

BOGGS, Circuit Judge.

The district court granted summary judgment for plaintiffs Albert and Helen Ware in their suit to recover taxes that they overpaid in 1988, 1989, and 1990. The district court found that because Albert Ware was an independent contractor of the Automobile Association of America ("AAA") rather than an employee, the plaintiffs could deduct Mr. Ware's unreimbursed business expenses from gross income. The district court entered summary judgment for the Wares, and the United States timely appeals that final judgment.

Because we agree with the district court's conclusion that Mr. Ware was an independent contractor rather than an employee of AAA, we affirm the district court's decision.

**I**

In 1992, plaintiffs sought to amend their federal tax returns for 1988, 1989, and 1990 to reflect Albert Ware's status as an independent contractor. The amendments would have deducted from the plaintiffs' gross income Albert Ware's unreimbursed business expenses[1] as a "Profit or Loss from Business" on Schedule C of Form 1040; the Wares had previously claimed the deduction as "Employee Business Expenses" on Form 2106. Schedule C deductions are subtracted from gross income to establish adjusted gross income ("AGI"), while employee business expenses are an itemized deduction that is subtracted from AGI to arrive at taxable income. However, itemized deductions on Form 2106 are excludable only to the extent that they exceed 2% of an individual's AGI. The net result of these amendments would have been federal income tax refunds of $491, $984, and $2,388, plus interest.

Moreover, the Wares state that the effect on their Michigan state taxes would have been even greater. Michigan assesses its income tax solely on the basis of federal AGI, so if the business expenses were treated as an itemized deduction (Employee Business Expense), the Wares' unreimbursed expenses would not be deducted on the state tax at all. Mich.Comp.Laws Ann. § 206.30(1)(a)–(b) (West 1986).

In a letter dated June 8, 1992, the Internal Revenue Service ("IRS") denied the Wares' claimed refund on the basis of the amended returns. Consequently, the Wares sued the IRS to recover "internal-revenue tax ... erroneously or illegally assessed or collected," under 28 U.S.C. § 1346(a)(1). The parties submitted to the district court a set of stipulated facts, from which the district court concluded that Albert Ware was an independent contractor of AAA, not an employee, and therefore was entitled to deduct the full amount of his unreimbursed business expenses from gross income. The district court entered a final judgment granting the

---

[*] The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Ware's business expenses were $20,691 in 1989, $35,039 in 1990, and $136,359 in 1991

($110,796 was paid as wages). The Wares' total income for those years was $80,757, $85,402, and $105,292, respectively. The United States does not dispute the amount nor the reasonableness of Ware's expenses.

Wares a refund, and the United States now appeals from that decision.

## II

For the most part, the facts are undisputed. Ware has sold insurance for AAA since 1962. In 1986, AAA offered him and two other sales agents the opportunity to become general agents and open their own insurance sales office. After conducting a market analysis, the three rented an office in Grand Rapids, and AAA approved the general layout and location of the office pursuant to provisions in its General Agents Manual. Ware was limited to selling only AAA policies, except that he could place business through other companies when the risk to be insured did not meet AAA standards.

The initial cost for leasing an office and buying furniture, a copier, a sign, and a telephone system was between $8,000 and $10,000, which was divided among the three general agents. AAA paid for the office's local phone service, but this was necessary in order for AAA to regulate Ware's Yellow Pages advertisement; payment for all other advertising was Ware's responsibility. Ware agreed to obtain all personnel through a temporary agency specified by AAA, so that when Ware wanted to hire a new employee, he would first direct the person to the agency and then hire that person through the agency.[2] Ware also agreed to keep the agency open at least 45 hours per week, including 9 a.m. to 5 p.m., Monday through Friday. He was not required to be present personally at any particular time, since it was expected that agents would be out of the office making sales calls. Ware used a computer system that wrote policies through AAA and was connected directly to a AAA mainframe. However, this system was used only to submit the policies for approval and receive confirmation. AAA supplied various insurance forms and business cards at no cost. Ware was free to utilize whatever sales techniques he preferred, although his applications and

policies had to satisfy AAA guidelines. AAA offered various training meetings and seminars, but attendance was at Ware's option.

The contract between Ware and AAA allowed termination by either party at will, established production requirements, and contained a ninety-day post-termination agreement not to compete. Ware also agreed that his "book of business" was property of AAA and would be returned to AAA within three days of termination. Ware worked solely for a commission, which was paid on a semi-monthly basis. He received extensive benefits, including paid vacation and sick days, was covered by a company-sponsored health and dental plan, and was eligible for a 401(k) and pension plan in which AAA matched Ware's contributions. State, federal, and FICA taxes were deducted from Ware's commission checks, as were his contributions to his medical insurance.

## III

■ This court reviews *de novo* the district court's entry of summary judgment. *Baggs v. Eagle–Picher Industries, Inc.,* 957 F.2d 268, 271 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992). The parties in this case do not disagree about the facts and circumstances of Ware's relationship with AAA, but instead dispute the legal meaning and weight that those facts should be given individually and in the aggregate.

The Supreme Court has consistently held that where a statute does not specifically define an "employee," that term is interpreted by incorporating the common law of agency. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–24, 112 S.Ct. 1344, 1347–49, 117 L.Ed.2d 581 (1992); *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *see NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968) (no "shorthand formula or magic

2. It is interesting to note that this arrangement was apparently intended to allow both AAA and Ware to avoid responsibility for employment taxes. AAA's Manual advised general agents to "[i]nform any person you want as part of your staff that he/she must apply to and work for the temporary employment agency and that the temporary employment agency will provide all applicable payroll services with worker's compensation protection and the provisions for all other required state and federal 'employment tax' payments."

phrase"; a court must assess and weigh "all of the incidents of the relationship ... with no one factor being decisive").

In *Community for Creative Non–Violence v. Reid*, the Court distinguished between an employee and an independent contractor for purposes of the "work made for hire" provisions of the Copyright Act of 1976. *Reid* involved a dispute between an artist and a non-profit organization over the copyright ownership of a sculpture. "In determining whether a hired party is an employee under the general common law of agency," the Court "consider[ed] the hiring party's right to control the manner and mean by which the product is accomplished." 490 U.S. at 751, 109 S.Ct. at 2178. For this inquiry, the Court evaluated a non-exclusive list of factors, with no single element being determinative:

> Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 751–52, 109 S.Ct. at 2178–79, *citing* Restatement of Agency § 220 [3] (footnotes omitted).

Despite the Court's language emphasizing control and its finding that "CCNV members directed enough of Reid's work to ensure that he produced a sculpture that met their specifications," the Court held that Reid was an independent contractor because "the extent of control the hiring party exercises over the details of the product is not dispositive." 490 U.S. at 752, 109 S.Ct. at 2179. Instead, "all the other circumstances weigh heavily against finding an employment relationship," among them: Reid's use of his own tools and studio, his freedom to decide when and how long to work, and that CCNV did not pay payroll or Social Security taxes, provide employee benefits, or contribute to workers' compensation or unemployment insurance funds.

The Court again grappled with the employee/independent contractor distinction in *Nationwide Mut. Ins. Co. v. Darden*, where the question was whether the plaintiff was an employee, and thus a benefit plan "participant" under 29 U.S.C. § 1132(a), for purposes of enforcing ERISA. 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). The statute's definition of employee was "completely circular and explains nothing," *id.* at 323, 112 S.Ct. at 1348, and the Fourth Circuit had utilized an "employee expectation" test for determining hiring status. The Court rejected the Fourth Circuit's test as too unpredictable and subjective, and it reiterated that the general common law of agency provided the default definition of employee. *Id.* at 323–24, 112 S.Ct. at 1348–49. However, the Court never actually applied the common law test, but instead remanded because the Fourth Circuit, without deciding the issue,

---

**3.** The Court uses the Restatement of Agency as a source of the common law of agency, but it acknowledges that § 220(2) contains a "non-exhaustive list of factors." 490 U.S. at 752 & n. 31, 109 S.Ct. at 2179 & n. 31. Even a cursory review of that work reveals that the Restatement focusses primarily on allocating the legal rights and liabilities between a principal and agent—whether one or the other receives a tax deduction, is covered by a pension plan, or assumes the risk of injury is barely mentioned (in fact, the last two *Reid* factors, concerning employee benefits and tax treatment, are not found in § 220(2) of the Restatement). Naturally, the degree of control that a principal exercises over another party is crucial to determining whether the prin-

cipal is or is not legally responsible for the other party's actions.

> The later Restatement (Second) of Agency makes this clearer:
> The word "employed" as used in this Section is not intended to connote a contractual or business relation. . . .
> . . . The relation of master and servant is not one capable of exact definition . . . [and is one that] depends upon the liability of the master to third persons and to his employees under the provisions of various statutes as well as under the common law. . . .

Restatement (Second) of Agency § 220 cmt. b & c (1957).

had merely opined that the Darden would probably not be considered an employee under traditional principles. *Id.* at 328, 112 S.Ct. at 1350–51.

Thus, the Supreme Court has directed courts to examine the same factors to resolve the "employee or contractor" dilemma in a case involving copyright ownership as in one involving ERISA eligibility. However, it seems clear that the relative weight given each factor may differ depending upon the legal context of the determination. For instance, a hiring party's control is more relevant in the context of copyright ownership, because the statute assigns ownership on the basis of authorship unless the parties explicitly agree otherwise. For a hiring party to gain ownership of "a work made for hire," as defined in the Copyright Act, the independent contractor must expressly assign her rights in writing. In contrast, a hiring party automatically acquires ownership of the works created by an employee (so long as the work is within one of the enumerated classes). Hence, the default rule strongly favors ownership by the person or group that actually created the work, i.e., controlled the manner of creation and ultimate result.

In contrast, control and supervision is less important in an ERISA context, where a court is determining whether an employer has assumed responsibility for a person's pension status. A court might properly emphasize how an employer treated a party with respect to other pension and fringe benefits but disregard that one party provided his own work tools.[4] Notwithstanding this recognition that certain factors may deserve added weight in some contexts, a court must evaluate *all* of the incidents of the employment relationship. Such was the case in *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245 (1989), where this court held that an insurance agent was an independent contractor for purposes of a vesting provision in

ERISA. The court found particularly telling that Wolcott hired his own employees, exercised managerial skill, owned and maintained his own office, was responsible for most of his expenses, paid his own insurance, and was required to have and retain a license to sell insurance. *Id.* at 251. Wolcott worked for commission and was responsible for reporting his self-employed income, as well as his business expenses, to the IRS. *Ibid.* Nationwide did not deduct FICA or income taxes, pay him standard employee benefits like sick and vacation pay or leave time, or include him in its pension or retirement plans. *Ibid.*

The fact that the same test might produce disparate results in different contexts merely reveals that the employer-employee relationship is complex, even under traditional rules of agency.[5] Although purporting to reflect the degree of control of a hiring party, several of the twelve factors listed in *Reid* are completely immaterial to an employer's right or ability to direct the hired party's performance. An employer's decision to pay a party a fixed salary is irrelevant to his ability to dictate the means or manner of performance, as is whether he withholds Social Security taxes. Likewise, an employer's provision of certain fringe benefits is not evidence that the employer has a greater degree of control over a hired party's conduct or output. In this era of exclusive licensing agreements and widespread franchising, a contract dictating the details of a business down to the color of its napkins and pens may be more an indicator of bargaining power or business practice than of an actual employer-employee relationship.

## IV

In this case, the district court performed a thorough and detailed analysis of the twenty factors listed in IRS Revenue Ruling 87–41, 1987–1 Cumulative Bulletin 296, 298–99, to

---

**4.** Whether an injured party is a employee for workers' compensation purposes poses an even more complicated problem. The *Reid* factors that involve financial matters (such as who pays certain taxes and how the hired party is paid) are probative of how the parties allocated the *cost* of injury, but the right to control, and the degree of control of the manner of work are especially relevant to how the parties allocated the *risk* of injury.

**5.** In theory, a person could be an independent contractor for copyright purposes yet remain an employee for ERISA qualification, but such instances should be rare.

determine whether Ware was an employee or independent contractor for tax purposes. The district court found that eleven factors favored Ware's classification as an independent contractor: Ware's lack of dependence upon instructions; that his service need not be provided personally; Ware's control and supervision of assistants; that work was not done on AAA's premises; that AAA did not set the sequence of his activities; that Ware did not submit formal reports or summaries to AAA beyond the basic insurance application information; that Ware worked entirely on commission; that he paid almost all of his own business expenses; that Ware paid for most of his "business tools"; that he made some investment in his facilities; and, that Ware may realize a profit and is subject to a risk of loss for his work.

The court also found that five factors were irrelevant or favored neither interpretation: the level of training by AAA; the existence of a continuous business relationship; the existence of fixed working hours; whether full-time work is required; and, whether the worker made his service available to the general public. The court found that only four factors favored employee status: AAA's right to discharge Ware without cause; its right to alter or terminate the business relationship; the fact that general agents are integral to AAA's business; and, that Ware could sell only AAA insurance, with minor exceptions.[6]

The court gave the first two little weight because AAA's ability to discharge or terminate Ware without cause was the same whether he was an employee or an independent contractor. However, general agents like Ware are an integral part of AAA's business, thus "[w]hen the success or continuation of a business depends ... upon the performance of certain services, the worker who perform those services must necessarily be subject to a certain amount of control by the owner of the business." Rev.Rul. 87–41 at 298. Additionally, having a single employer is generally an indicia of employee status.

In weighing the factors, the court's conclusion that they cumulatively favored independent contractor status was not based simply on the number of factors favoring each party. Rather, the court reconsidered all the facts as they bore upon the degree of control exercised or retained by each party. The court conceded that it was troubled by AAA's treating Ware the same as its employees for purposes of benefits and tax withholding. However, AAA's actual influence over how Ware did business was minimal, and Ware's financial responsibility for the enterprise dwarfed AAA's financial role and investment.

The revenue ruling states that these "twenty factors or elements have been identified as indicating whether sufficient control is present to establish an employer-employee relationship." 1987–1 C.B. at 297. Like the twelve factors listed in *Reid*, several of the twenty factors listed in the revenue ruling have little bearing on a hiring party's control. Moreover, Revenue Ruling 87–41 is explicitly intended to provide guidance for "federal *employment* tax purposes," i.e., whether an employer should withhold FICA taxes, or whether the worker is responsible for the same. However, whether a party is entitled to a tax *deduction* raises subtly different issues.

■ The question in this case is whether Mr. Ware has operated sufficiently independently of AAA that he should be able to deduct all his business expenses directly from gross business income. If Ware were an employee, particularly one with a fixed salary, spending large sums on such expenses would seem foolish; as an independent contractor with the ability to increase his profits, these expenses are a cost of business or an investment. Therefore, those factors that reveal which party stands to profit from the expenditures are most important, and we find that these factors (numbers twelve through sixteen, J.A. 36–37) strongly favor independent contractor status, and serve to reinforce the district court's holding.

6. Although "the provision of employee benefits" and "the tax treatment of the hired party" were two of the twelve factors listed in *Reid*, 490 U.S. at 752, 109 S.Ct. at 2179, neither factor was enumerated in the revenue ruling. This shows that the ruling may supplement the common law test of agency, but alone is an inadequate substitute.

First, Ware was paid by commission rather than straight salary or according to the number of hours worked (factor 12). He paid most of his business and travel expenses (13), furnished almost all of his own tools and materials (14), and he made a significant investment in the enterprise (15), at least relative to AAA's stake in the venture. Finally, Ware stood to profit or lose money as a result of his services (16), the former being particularly important. The revenue ruling notes, "[t]he risk that a worker will not receive payment for his or her services ... is common to both independent contractors and employees," but the reverse is certainly not true. Both Ware and AAA bargained for Ware's entrepreneurship and the profit incentive in changing to a general agent relationship, and part and parcel of that arrangement is Ware's ability and freedom to invest accordingly in additional office help, equipment and advertising for his own benefit.

## V

Finally, we note that this case is analogous to two cases where the Eleventh Circuit held that an insurance agent was an independent contractor: *Butts v. Commissioner,* 49 F.3d 713, 714 (11th Cir.1995) (consolidating *Butts v. Commissioner,* 66 T.C.M. (CCH) 1041, 1993 WL 410704 (1993), and *Smithwick v. Commissioner,* 66 T.C.M. (CCH) 1545, 1993 WL 503911 (1993)). Although a fact-specific balancing test invites factual hair-splitting, that does not mean that case authority is irrelevant, and we find these cases persuasive. The court held that the plaintiff in *Butts* was an independent contractor, in spite of the fact that Butts received paid vacation, a pension and 401(k) plan, 75% of health insurance costs, coverage under Allstate's malpractice policy, and payment of his licensing and professional fees. Further, *Butts* involved precisely the practice at issue: inclusion of expenses on Schedule C instead of Schedule A. *Smithwick* involved a general agent who had identical contracts with Allstate, and the Eleventh Circuit noted that *Smithwick* "had no relevant facts that are distinguishable from the *Butts* case." *Butts,* 49 F.3d at 714.

## VI

After applying the general common law of agency to the facts of this case, we agree with the district court's conclusion that Albert Ware was an independent contractor, and we AFFIRM the judgment of the district court.