BOGGS, Circuit Judge.
 

 In this class action, the named plaintiffs represent several thousand current and former insurance agents for American Family Insurance Company and its affiliates (collectively, "American Family" or "the company"). The agents claim that American Family misclassified them as independent contractors, while treating them as employees, in order to avoid paying them benefits in compliance with the Employee Retirement Income Security Act of 1974 ("ERISA").
 

 The sole issue in this interlocutory appeal concerns the nature of the parties' legal relationship: are the plaintiffs employees or independent contractors for American Family? The company appeals the district court's judgment that the plaintiffs are employees. Because American Family properly classified its agents as independent contractors, we reverse.
 

 I
 

 As with many insurance companies, American Family sells its products primarily through a network of insurance agents. American Family, in keeping with common industry practice, classifies its agents as independent contractors rather than employees.
 

 Taking issue with this designation and the consequences it has on their ability to enjoy the protections of ERISA, the plaintiffs brought a proposed class action against American Family in 2013, alleging
 that the company misclassified them as independent contractors. The plaintiffs contended that their miscategorization "deprived [them] of the rights and protections guaranteed by state and federal law to employees, including their rights under ERISA." They sought,
 
 inter alia
 
 , a declaratory judgment that they are employees for all purposes, including but not limited to ERISA, and that as employees they are due benefits under ERISA.
 

 Both parties filed several pre-trial motions, including motions by American Family to dismiss and later for summary judgment. The plaintiffs, for their part, moved for class certification. The district court granted the plaintiffs' motion and denied each of American Family's motions in whole or in part. The company sought permission from this court to appeal the district court's order granting class certification, but we denied the company's request. The district court subsequently denied two motions by American Family to decertify the class.
 

 The case then proceeded to trial, which the district court bifurcated to allow for determination of the threshold question of the plaintiffs' employment status. Trial of this single issue took place before an advisory jury, pursuant to Federal Rule of Civil Procedure 39(c)(1), which permits district courts to "try any issue with an advisory jury" in an action that is "not triable of right by a jury."
 
 [1]
 

 During the twelve-day trial, the jury learned that the parties took many steps to structure their relationship consistent with American Family's position that its agents are independent contractors. Most pointedly, at the outset of the agents' tenure with the company, all agents signed a written agreement stating that they were independent contractors rather than employees. In keeping with this designation, the agents file their taxes as independent contractors and deduct their business expenses as self-employed business owners. American Family also pays its agents in commissions and does not provide them with vacation pay, holiday pay, sick pay, or paid time off.
 

 Moreover, as the district court recounted, "[t]he company calls its agents 'business owners' and 'partners' and tells new agents they will be 'agency business' owners and that they need to 'invest' in 'their business.' " The agents work out of their own offices, set their own hours, and hire and pay their own staff. They also are responsible for providing most of the resources necessary to run their agencies, such as office furniture and office supplies.
 

 But the plaintiffs also presented significant evidence to support their claim that American Family treats them more like employees than independent partners and business owners. The company classifies everyone in its sales force-other than its agents-as employees. Nevertheless, the company's training manuals refer to the agents as "employees." Each agent must report to an Agency Sales Manager, and the plaintiffs presented testimony that American Family did not train these managers to treat the agents as independent contractors or even make the managers aware that the agents were classified as such.
 

 According to the plaintiffs, the managers exerted a great amount of control over their day-to-day activities. The managers insisted, among other required tasks, that
 the agents complete daily activity reports, prioritize selling certain insurance policies, and participate in "life-call" nights in which the agents had to stay after normal business hours to solicit life insurance by calling prospective customers. The plaintiffs also offered testimony that the company retained some authority to approve or disapprove of the location of the agents' offices and to be involved in the hiring and firing of the agents' staff in a way that limited the plaintiffs' ability to run their own agencies.
 

 The jury also heard testimony that American Family teaches agents everything they need to know to become licensed, run an agency, and sell the company's products. All agents attend a two-to-three-month-long comprehensive training program run by American Family on how to sell insurance and how to operate an agency. Once hired, the agents must sell insurance exclusively for American Family, and they are discouraged-but not forbidden-from taking other work, even if it is unrelated to the insurance industry. There is no limit on the duration of the agency relationship, and American Family describes the agency position as a career position. Although the agents are not eligible for the same pension or retirement plans given to the company's employees, they are offered an "extended earnings" benefit that is described to them as a retirement plan.
 
 [2]
 
 When and if their relationship with the company does come to an end, the agents are prohibited for a year from soliciting business from any of their former American Family customers. And unlike most business owners, the agents cannot sell their agencies or assign any rights to income from their agencies.
 

 At the close of the trial, the court presented the advisory jury with the following interrogatory:
 

 Please answer the following question "yes" or "no" according to your findings: Did Plaintiffs prove by a preponderance of the evidence that they are employees of Defendant American Family?
 

 The jury answered "yes."
 

 After giving the parties a final opportunity to present their proposed findings of fact and conclusions of law, the court issued an opinion in which it acknowledged that although it was not bound by the advisory jury's determination, it believed that the jury's verdict "comport[ed] with the weight of the evidence presented at trial." Accordingly, the district court determined that the agents were employees for the purposes of ERISA.
 

 The district court certified its ruling for an interlocutory appeal under
 
 28 U.S.C. § 1292
 
 (b), and American Family filed a petition for interlocutory review of the court's order. We granted permission to appeal, which American Family did, arguing that the district court erred in determining that the plaintiffs are employees.
 
 [3]
 

 II
 

 A
 

 The determination of whether a plaintiff qualifies as an employee under ERISA is a mixed question of law and fact
 that a judge normally can make as a matter of law.
 
 See
 

 Weary v. Cochran
 
 ,
 
 377 F.3d 522
 
 , 524 (6th Cir. 2004) ;
 
 Waxman v. Luna
 
 ,
 
 881 F.2d 237
 
 , 240 (6th Cir. 1989). After a bench trial to determine a plaintiff's employment status, this court typically reviews a district court's factual findings for clear error and its legal conclusions, including its ultimate decision about the plaintiff's status, de novo.
 
 Solis v. Laurelbrook Sanitarium & Sch., Inc.
 
 ,
 
 642 F.3d 518
 
 , 522 (6th Cir. 2011). However, "[o]n interlocutory appeal under 28 U.S.C. 1292(b), our review is limited to the district court's conclusions of law
 
 .
 
 "
 
 Sheet Metal Emp'rs Indus. Promotion Fund v. Absolut Balancing Co.
 
 ,
 
 830 F.3d 358
 
 , 361 (6th Cir. 2016). We review those conclusions de novo, but "we have no authority to review the district court's findings of fact."
 
 Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.
 
 ,
 
 270 F.3d 1018
 
 , 1023 (6th Cir. 2001).
 

 "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."
 
 Shaw v. Delta Air Lines
 
 ,
 
 463 U.S. 85
 
 , 90,
 
 103 S.Ct. 2890
 
 ,
 
 77 L.Ed.2d 490
 
 (1983). The plaintiffs brought this action under
 
 29 U.S.C. § 1132
 
 (a), which enables "participant[s]" in an employee benefit plan to enforce ERISA's substantive provisions. Under ERISA, a "participant" is "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer."
 
 29 U.S.C. § 1002
 
 (7). Therefore, the plaintiffs can prevail on their ERISA claims only if they can show that they were American Family's employees.
 
 Nationwide Mut. Ins. Co. v. Darden
 
 ,
 
 503 U.S. 318
 
 , 321,
 
 112 S.Ct. 1344
 
 ,
 
 117 L.Ed.2d 581
 
 (1992).
 

 ERISA defines an "employee" as "any individual employed by an employer."
 
 29 U.S.C. § 1002
 
 (6). An "employer," in turn, "means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." § 1002(5). Because these definitions provide little guidance as to the meaning of "employee," "the Supreme Court has instructed courts to interpret the term by 'incorporating the common law of agency.' "
 
 Bryson v. Middlefield Volunteer Fire Dep't, Inc.
 
 ,
 
 656 F.3d 348
 
 , 352 (6th Cir. 2011) (quoting
 
 Ware v. United States
 
 ,
 
 67 F.3d 574
 
 , 576 (6th Cir. 1995) (citing
 
 Darden
 
 ,
 
 503 U.S. at 322-24
 
 ,
 
 112 S.Ct. 1344
 
 ) ).
 

 In
 
 Darden
 
 , the Supreme Court provided the following standard "for determining who qualifies as an 'employee' under ERISA."
 
 503 U.S. at 323
 
 ,
 
 112 S.Ct. 1344
 
 .
 

 In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
 

 Id.
 

 at 323-24
 
 ,
 
 112 S.Ct. 1344
 
 (quoting
 
 Cmty. for Creative Non-Violence v. Reid
 
 ,
 
 490 U.S. 730
 
 , 751-52,
 
 109 S.Ct. 2166
 
 ,
 
 104 L.Ed.2d 811
 
 (1989) ). In addition to these factors ("the
 
 Darden
 
 factors"), we have
 held that an express agreement between the parties concerning employment status is also a relevant consideration.
 
 See
 

 Weary
 
 ,
 
 377 F.3d at 525
 
 .
 

 The "crux of
 
 Darden
 
 's common law agency test is 'the hiring party's right to control the manner and means by which the product is accomplished.' "
 

 Ibid.
 

 (quoting
 
 Darden
 
 ,
 
 503 U.S. at 323
 
 ,
 
 112 S.Ct. 1344
 
 ). Thus, "our analysis of [the
 
 Darden
 
 ] factors ... reflects upon, and is relevant to, this core issue of control."
 

 Ibid.
 

 "[T]he relative weight given each factor may differ depending upon the legal context of the determination."
 
 Ware
 
 ,
 
 67 F.3d at 578
 
 . "Notwithstanding this recognition that certain factors may deserve added weight in some contexts, a court must evaluate
 
 all
 
 of the incidents of the employment relationship."
 

 Ibid.
 

 ;
 
 see also
 

 Darden
 
 ,
 
 503 U.S. at 324
 
 ,
 
 112 S.Ct. 1344
 
 ("Since the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.' " (alteration in original) (quoting
 
 NLRB v. United Ins. Co. of Am.
 
 ,
 
 390 U.S. 254
 
 , 258,
 
 88 S.Ct. 988
 
 ,
 
 19 L.Ed.2d 1083
 
 (1968) ) ).
 

 Applying the test from
 
 Darden
 
 and its progeny, the district court determined that the plaintiffs were employees rather than independent contractors. After deciding that the
 
 Darden
 
 factors were "almost evenly split between favoring employee status and favoring independent contractor status," the court proceeded to a broader analysis of the level of control that American Family exercised over its agents. Ultimately, the court concluded that "[t]he degree of control managers were encouraged to exercise was inconsistent with independent contractor status and was more in line with the level of control a manager would be expected to exert over an employee." This, along with the evidence related to the other
 
 Darden
 
 factors, led the court to determine that the plaintiffs were employees during the relevant class period.
 

 B
 

 Since in this interlocutory appeal we may review only the district court's conclusions of law, we must first decide which of the court's determinations were matters of law and which were factual. This much is clear: the district court's findings underlying its holding on each of the
 
 Darden
 
 factors are factual findings, and the court's ultimate conclusion as to whether the plaintiffs were employees is a question of law.
 

 But what of the court's conclusions about the
 
 Darden
 
 factors-both of their existence and of the weight to be assigned them? Are these factual findings or conclusions of law? Although neither party has provided much briefing on this question, the plaintiffs suggest that these are issues of fact, while American Family claims that they are issues of law. The parties' dispute is understandable, as we have yet to clarify whether and to what extent a court's conclusions about the individual factors that make up the
 
 Darden
 
 standard are factual or legal in nature. Indeed, some of our decisions seem to be in tension with one another, with some indicating that a district court's determinations on the
 
 Darden
 
 factors are factual findings,
 
 see
 

 Peno Trucking, Inc. v. C.I.R.
 
 ,
 
 296 F. App'x 449
 
 , 454-60 (6th Cir. 2008) (stating, first, that the appropriate rule is to review factual findings for clear error and, second, that the Tax Court's findings about control and other factors were not clearly erroneous);
 
 Moore v. Lafayette Life Ins.
 
 ,
 
 458 F.3d 416
 
 , 440 (6th Cir. 2006) (concluding that the district court's findings on
 
 Darden
 
 factors were not clearly erroneous), and others suggesting that they are legal conclusions,
 
 see
 

 Janette v. Am. Fid. Grp., Ltd.
 
 ,
 
 298 F. App'x 467
 
 , 473-74 (6th Cir. 2008) (describing the proper tests for the control factor and skill-required factor);
 
 Weary
 
 ,
 
 377 F.3d at 526
 
 (explaining that a certain degree of limited authority is not the type of control that establishes an employer-employee relationship);
 

 id.
 

 at 532
 
 (arguing that the majority erred in defining the skill-required factor and explaining what the "legal issue" is concerning that factor) (Clay, J., dissenting).
 

 Other circuits, however, have explicitly considered this question and have come down on the side of treating these as factual matters subject to review for clear error. According to our sister circuits:
 

 The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts-whether workers are employees or independent contractors-is a question of law. Thus, a district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of employment status is
 
 de novo
 
 .
 

 Brock v. Superior Care, Inc.
 
 ,
 
 840 F.2d 1054
 
 , 1059 (2d Cir. 1988) (applying multi-factor "economic reality" test to claim under FLSA);
 
 Berger Transfer & Storage v. Cent. States, Se. and Sw. Areas Pension Fund
 
 ,
 
 85 F.3d 1374
 
 , 1377-78 (8th Cir. 1996) ;
 
 Dole v. Snell
 
 ,
 
 875 F.2d 802
 
 , 805 (10th Cir. 1989).
 

 Granting due weight to our own and our sister circuits' jurisprudence, we do not agree that a district court's conclusion relating to the existence and degree of each
 
 Darden
 
 factor is entirely a question of fact. There is a distinction between a lower court's factual findings, which we review for clear error, and "the district court's application of the legal standard to them," which we review de novo.
 
 Solis v. Laurelbrook Sanitarium and School, Inc.
 
 ,
 
 642 F.3d 518
 
 , 522 (6th Cir. 2011). The lower court's determination of a
 
 Darden
 
 factor often necessarily involves the application of a legal standard to particular factual findings. Take, for example,
 
 Darden
 
 's first factor: "[W]hether the skill [required of an agent] is an independent discipline (or profession) that is separate from the business and could be (or was) learned elsewhere."
 
 Weary
 
 ,
 
 377 F.3d at 532
 
 (Clay, J., dissenting);
 
 see also
 

 Darden
 
 ,
 
 503 U.S. at 323
 
 ,
 
 112 S.Ct. 1344
 
 . As Judge Clay observed in his dissent in
 
 Weary
 
 , there is a "legal issue" inherent in the first factor as to whether to consider "the amount of skill required" or rather "whether the skill is an independent discipline (or profession) that is separate from the business."
 
 Weary
 
 ,
 
 377 F.3d at 532
 
 (Clay, J., dissenting). Each
 
 Darden
 
 factor is thus itself a "legal standard" that the district court is applying to the facts.
 
 See also
 

 Ware
 
 ,
 
 67 F.3d at 576
 
 (distinguishing the "facts and circumstances" underlying the
 
 Darden
 
 factors from both "
 
 the legal meaning and weight
 
 that those facts should be given
 
 individually and in the aggregate
 
 ") (emphasis added). It is therefore appropriate for us to review de novo those determinations to the extent that they involve the application of a legal standard to a set of facts.
 

 What's more, as we recognized in
 
 Ware
 
 , "the relative weight given to each [
 
 Darden
 
 ] factor may differ depending upon the
 
 legal context
 
 of the determination."
 

 Id.
 

 at 578
 
 (emphasis added). Thus, for example, "a hiring party's control is more relevant in the context of copyright ownership, because the statute assigns ownership on the basis of authorship unless the parties explicitly agree otherwise," but "less important in an ERISA context."
 
 Ibid
 
 . This implies that certain factors may carry more or less weight depending on the particular legal context in which the independent-contractor
 relationship is being determined.
 

 Ibid.
 

 (noting that the "same test might produce disparate results in different contexts"). Accordingly, it is also appropriate for us to review de novo the district court's weight assigned to of each of the
 
 Darden
 
 factors, given the legal context in which the claim has been brought.
 

 III
 

 A
 

 Here, the district court incorrectly applied the legal standards in determining the existence of the
 
 Darden
 
 factors relating to (1) the skill required of an agent and (2) the hiring and paying of assistants. Had the court applied those standards properly, it would have found that those factors actually favored independent-contractor status. We analyze each of those factors below.
 
 [4]
 

 The first factor under
 
 Darden
 
 looks to "whether the skill [required of an agent] is an independent discipline (or profession) that is separate from the business and could be (or was) learned elsewhere."
 
 Weary
 
 ,
 
 377 F.3d at 532
 
 (Clay, J., dissenting);
 
 see also
 

 Janette
 
 ,
 
 298 F. App'x at 474
 
 . The district court held that the "amount of skill" factor under
 
 Darden
 
 weighs "slightly in favor of employee status" primarily on the basis that American Family "sought out potential agents who were untrained." In doing so, the district court erred.
 

 This circuit has previously held that the skill required of insurance agents weighs in favor of independent-contractor status because "the sale of insurance is a highly specialized field" that requires "considerable training, education, and skill."
 
 Weary
 
 ,
 
 377 F.3d at 526-27
 
 (internal quotations omitted). The skill inquiry centers on whether the skill is an independent discipline that "could be" learned elsewhere.
 

 Id.
 

 at 532
 
 (Clay, J., dissenting). Though American Family preferred hiring untrained, and often unlicensed, agents, the underlying discipline of selling insurance remains the same regardless of American Family's hiring preferences.
 

 Ibid.
 

 ("[B]ecause the skill of selling insurance is a general one, the majority may be correct in its conclusion that this factor favors independent contractor status."). The district court therefore misapplied the legal standard to the facts; the correct application would have weighed this factor in favor of independent contractor status, as this circuit has done previously.
 

 Darden
 
 's eighth factor examines "the hired party's role in hiring and paying assistants."
 
 Darden
 
 ,
 
 503 U.S. at 323-24
 
 ,
 
 112 S.Ct. 1344
 
 . The court mistakenly weighed this factor as "neutral" after concluding that the agents "had primary authority to hire their own staff" and were solely responsible for all "staff compensation matters."
 

 The district court found, as a factual matter, that American Family agents were responsible for paying their own staff, determining and paying for any benefits and taxes associated with that staff, and deciding whether to classify their staff as employees or independent contractors. While American Family provided "pre-approved" candidates, whom the agents could select as their staff, it did not require the agents to hire these pre-screened candidates. Agents also had sole discretion in staff-compensation matters and the sole responsibility to withhold and remit taxes to the federal government as the employers of their staff.
 

 On the other hand, American Family imposed qualifications on appointed agency
 staff, including state licensure, clean driving records, education levels, credit history, and minimum income-to-debt ratios. American Family did not provide computer access to any non-approved appointed agency staff and required agency staff to agree to a lifetime non-solicitation agreement. American Family had the right to fire any agency staff, appointed or non-appointed, who did not live up to the American Family Code of Conduct, and it retained the right, although rarely exercised, to fire agency staff for any reason. American Family managers were also evaluated on the number of staff employed by their agents and would sometimes offer monetary subsidies to agents to hire more staff.
 

 Considering all of these facts, the district court determined that "[a]lthough American Family retained some right to override an agent's hiring and firing decision, on balance, agents had primary authority over hiring and paying their assistants." Yet the court inexplicably concluded from that finding that the factor was "neutral." This conclusion was contrary to
 
 Darden
 
 's language. If the hired party has the "primary authority over hiring and paying its own assistants," the
 
 Darden
 
 factor regarding "the hired party's role in hiring and paying assistants" should weigh in favor of independent-contractor status.
 
 Janette
 
 ,
 
 298 F. App'x at 475-76
 
 (Because plaintiff "could have hired assistants, at her expense," the factor favored independent-contractor status.). Any other conclusion conflicts with
 
 Darden
 
 's clear language.
 

 B
 

 Further, given our determination regarding the existence of each of the
 
 Darden
 
 factors,
 
 [5]
 
 the district court also erred by not properly weighing those factors that are particularly significant in the legal context of ERISA eligibility.
 
 Darden
 
 asks us to look at the "hiring party's right to control the manner and means by which the product is accomplished," which we have determined to be "a broad consideration that is embodied in many of the specific factors articulated" there.
 
 Weary
 
 ,
 
 377 F.3d at 525
 
 . But "the relative weight given each [
 
 Darden
 
 ] factor may differ depending upon the legal context of the determination."
 
 Ware
 
 ,
 
 67 F.3d at 578
 
 . In particular, "control and supervision is less important in an ERISA context, where a court is determining whether an employer has assumed responsibility for a person's pension status."
 
 Ibid
 
 . Because ERISA cases focus on the financial benefits that a company should have provided, the
 
 financial structure
 
 of the company-agent relationship guides the inquiry. Here, the
 
 Darden
 
 factors that most pertain to that financial structure favor independent-contractor status and, accordingly, carry more weight in the ERISA context.
 

 In this case, the district court found that the insurance agents invested heavily in their offices and instrumentalities, paid rent and worked out of their own offices, earned commissions on sales, were not eligible for employment benefits, and paid taxes as independent contractors. Accordingly, the court weighed factors two (the source of the instrumentalities and tools), three (the location of the work), seven (method of payment), eleven (provision of employee benefits), and twelve (tax treatment) in favor of independent-contractor status.
 
 [6]
 
 We have now corrected the district
 court's weighing of factors one (the skill required) and eight (the hired party's role in hiring and paying assistants) to favor independent-contractor status, as well. Because this inquiry exists in the legal context of ERISA benefits, this collection of factors-particularly the ones relating to the source of the instrumentalities and tools, the method of payment, the provision of employee benefits, and the agents' tax treatment-is especially important in determining the parties' financial structure. Accordingly, these factors should have carried greater weight in the district court's final analysis. Had the court properly weighed those factors in accordance with their significance, it would have determined that the entire mix of
 
 Darden
 
 factors favored independent-contractor status.
 

 As further evidence of the financial structure of the parties' relationship, the lower court should have also given greater weight to the parties' express agreement. In determining the parties' relationship in the
 
 Darden
 
 context, we have several times "look[ed] to any express agreement between the parties as to their status as it is the best evidence of their intent" and placed great weight on that agreement.
 
 Janette
 
 ,
 
 298 F. App'x. at
 
 471 ;
 
 Weary
 
 ,
 
 377 F.3d at 525
 
 (noting that the existence of a contract characterizing Weary as an independent contractor is "certainly relevant to the inquiry" and shows "how the parties themselves viewed the nature of their working relationship"). Our sister circuits have adopted this approach, as well. See
 
 Brown v. J. Kaz., Inc.
 
 ,
 
 581 F.3d 175
 
 , 181 (3d Cir. 2009) (noting that an independent-contractor agreement "is strong evidence" of independent-contractor status);
 
 Schwieger v. Farm Bureau Ins. Co. of Neb.
 
 ,
 
 207 F.3d 480
 
 , 487 (8th Cir. 2000) (same). A written contract shows "how the parties themselves viewed the nature of their working relationship" and therefore carries great-but not dispositive-weight in determining an independent-contractor relationship.
 
 Weary
 
 ,
 
 377 F.3d at 525
 
 .
 

 The Agent Agreement governing the parties' business relationship here indicates that they structured their relationship so that the agents should be treated as independent contractors. Each Agreement contained a paragraph either identical to or substantively similar to the following:
 

 It is the intent of the parties hereto that you are not an employee of the Company for any purpose, but are an independent contractor for all purposes, including federal taxation with full control of your activities and the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders and otherwise carrying out the provisions of this agreement. As an independent contractor you are responsible for your self-employment taxes and are not eligible for various employee benefits such as Workers and Unemployment Compensation.
 

 The Agreement also provides that:
 

 Rates, rules, regulations and all provisions contained in the Company's Agent's Manuals and all changes to them shall be binding upon you. If any inconsistency or ambiguity exists between this agreement and such rate, rule, regulation, provision or other statement or statements, whether written or oral,
 
 this agreement shall control
 
 .
 

 (emphasis added). The Agency Agreement therefore states in wholly unambiguous
 terms that agents are independent contractors who retain "full control" over several facets of their business.
 

 The district court correctly recognized that the agreement favored independent-contractor status. But the court apparently did not weigh this important component when reaching its conclusion regarding independent-contractor status. Had the lower court given this express agreement proper consideration, it would have further swung the balance in favor of independent-contractor status.
 

 IV
 

 This court has time and again declared insurance agents to have independent-contractor status-and appellees have presented no case in which we have not done so.
 
 See, e.g.,
 

 Weary,
 

 377 F.3d at
 
 524 ;
 
 Wolcott v. Nationwide Mut. Ins. Co.
 
 ,
 
 884 F.2d 245
 
 , 251 (6th Cir. 1989). Some of our sister circuits have in fact already found American Family agents to be independent contractors in other contexts.
 
 Wortham v. Am. Family Ins. Grp.
 
 ,
 
 385 F.3d 1139
 
 , 1140-41 (8th Cir. 2004) ;
 
 Moore v. Am. Family Mut. Ins. Co.
 
 , No. 90-3107,
 
 1991 WL 111878
 
 , *1,
 
 1991 U.S. App. LEXIS 13574
 
 , *3 (7th Cir. June 25, 1991). The plaintiffs have not shown that the facts here are so radically different from these cases to justify what would be a significant departure from these rulings, especially in the "legal context" of ERISA eligibility where we have held that "control and supervision is less important" than the financial structure of the parties' relationship.
 
 Ware
 
 ,
 
 67 F.3d at 578
 
 . Accordingly, we REVERSE and REMAND for further proceedings in accordance with this holding.
 

 DISSENT
 

 Plaintiffs seeking relief under ERISA generally have no right to have their claims decided by a jury.
 
 See, e.g.
 
 ,
 
 Wilkins v. Baptist Healthcare Sys.
 
 ,
 
 150 F.3d 609
 
 , 616 (6th Cir. 1998) ;
 
 Bittinger v. Tecumseh Prods. Co.
 
 ,
 
 123 F.3d 877
 
 , 882-83 (6th Cir. 1997) ;
 
 Bair v. Gen. Motors Corp.
 
 ,
 
 895 F.2d 1094
 
 , 1096-97 (6th Cir. 1990).
 

 The "extended earnings" program offered a lifetime annuity to agents and was reported as one of American Family's "Defined Benefit Plans" in its annual statement filed with insurance regulators. Agents were automatically enrolled in these plans, did not contribute to these plans, and received increasing benefits with increasing years of service.
 

 The company also contends that the court's determination was erroneous because it relied on non-representative class evidence. Because we decide the case on other grounds, we do not reach this issue.
 

 Since we do not find that the district court applied an improper legal standard to any of the other
 
 Darden
 
 factors, we do not address them here.
 

 That is to say, whether each
 
 Darden
 
 factor favors independent-contractor or employee status.
 

 The district court weighed the "method of payment" factor in favor of independent-contractor status for agents "once they began selling policies out of their own office." During the agents' "training period," the court weighed the factor in favor of employee status.